983 F.2d 1070
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Billy MCINTOSH; Johnny Mann; Wilson Stone; Lester Drake;
Omer Noe, Defendants-Appellants.
 Nos. 91-6236, 91-6240, 91-6282 to 91-6284
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1992.
 
 Before KEITH, KENNEDY and NATHANIEL R. JONES, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal raises numerous individual and collective challenges to the convictions and sentences imposed by the district court. For the reasons stated below, we affirm the convictions and sentences in all respects, except as to appellant Noe's enhancement under the Sentencing Guidelines for being a high-level decision maker.
 
 I.
 
 2
 On August 15, 1990, a Federal Grand Jury in the Eastern District of Kentucky returned a forty-two count indictment against appellants Johnny Mann, Sheriff of Lee County, Kentucky; Dean Spencer, Sheriff of Breathitt County, Kentucky; Lester Drake, Sheriff of Wolfe County, Kentucky; Wilson Stone, a Deputy Sheriff of Wolfe County, Kentucky; Billy McIntosh, Sheriff of Owsley County, Kentucky; and Omer Noe, Chief of Police of Beattyville, Kentucky.
 
 
 3
 The indictment contained the following charges: (1) a conspiracy among appellants to obstruct, delay and affect commerce, by extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951; (2) thirty-three separate alleged substantive violations of the Hobbs Act, 18 U.S.C. § 1951; (3) a conspiracy among appellants to distribute and possess with the intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 2(a) and (b); (4) six substantive counts against each appellant for attempting to distribute and facilitating the distribution of cocaine, and aiding and abetting such attempted distribution in violation of 21 U.S.C. § 846, and 18 U.S.C. §§ 2(a) and (b); and (5) one count against appellant Johnny Mann for distributing marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 2(a) and (b)(1).
 
 
 4
 An undercover FBI operation initiated in July 1989 led to the indictment in this case. The purpose of the operation was to investigate suspected law enforcement corruption in Southeastern Kentucky. The operation was designed to uncover corrupt law enforcement officers by having FBI agents Dave Keller and Ron Poole pose as drug dealers offering payoffs to the suspected officers in exchange for police protection from interference with their drug operation which involved the smuggling and distribution of cocaine and marijuana in Kentucky. As part of the undercover operation, the FBI was assisted by James Richardson, a well-known marijuana dealer.
 
 
 5
 The appellants filed pre-trial motions to dismiss, alleging outrageous conduct by the government in its investigation. Appellants contend that they were not involved in any pre-existing organized criminal activity and that there was no pre-existing cocaine problem in their counties warranting an investigation. Appellants claim that the FBI created the organized criminal activity and the cocaine problems in their counties by organizing and controlling the undercover investigation, which included a cocaine distribution ring. During the course of the undercover operation, Mann received $43,000 in payoffs; Drake received $21,000, $4,000 of which he claims he shared with Stone; McIntosh received $12,000; and Noe received $5,000.
 
 
 6
 Evidence presented at trial revealed that the FBI had intelligence information that officers in Southeastern Kentucky were taking payoffs from bootleggers, as well as marijuana growers and dealers. The government also presented evidence that the FBI had intelligence information indicating that both cocaine and marijuana were problems in Southeastern Kentucky. Based on this information, the FBI initiated the undercover operation focusing on appellant Mann. Mann introduced the agents to the other officers, who then willingly advised and assisted the agents in the drug operation. The agents testified that the undercover operation fully complied with all FBI and Department of Justice guidelines.
 
 
 7
 All counts of the indictment were tried before a jury on July 8, 1991, in the Eastern District of Kentucky. The jury returned its verdict on August 16, 1991. Appellant Spencer was acquitted on all charges brought against him. The remaining appellants, however, were convicted on various counts of the indictment. Timely notices of appeal were filed by each of the appellants who received convictions. The matter was consolidated for this appeal, which raises numerous challenges to the convictions and sentences imposed by the district court.
 
 II.
 A. Outrageous Government Conduct
 
 8
 Appellants contend that the FBI's role in the undercover drug operation amounted to outrageous government conduct, and therefore, the indictment should have been dismissed, or in the alternative, a judgment of acquittal granted. Appellants' principle argument is that the government needlessly introduced cocaine into the undercover operation.
 
 
 9
 In United States v. Barger, 931 F.2d 359 (6th Cir.1991) this Circuit addressed the issue raised by appellants regarding the government's conduct in the undercover operation. In Barger, we stated that "[f]undamental fairness is a core component of the Due Process Clause of the Fifth Amendment." Barger, 931 F.2d at 363 (citing United States v. Brown, 635 F.2d 1207, 1212 (6th Cir.1980). The Barger court further noted that "challenged government conduct must violate fundamental fairness and be 'shocking to the universal sense of justice' " to be deemed unconstitutional. Id. The Barger court outlined four factors that should be considered when determining whether government conduct is so outrageous that it violates an accused's due process rights. These four factors are:
 
 
 10
 (1) the need for the police conduct as shown by the types of criminal activity involved, (2) the impetus for the scheme or whether the criminal enterprise preexisted the police involvement, (3) the control the government exerted over the criminal enterprise, and (4) the impact of the police activity on the commission of the crime. United States v. Robinson, 763 F.2d 778, 785 (6th Cir.1985); Norton, 700 F.2d at 1075; Brown, 635 F.2d at 1212-13. Since these are factors for consideration, not mandatory prongs in a test, every one need not be shown.
 
 
 11
 Barger, 931 F.2d at 363. These factors are discussed below as they relate to this case.
 
 1. The Need for the Police Conduct
 
 12
 Appellants argue that there was no need for the FBI's investigation because there was no preexisting criminal activity that warranted such an investigation, especially as to cocaine distribution. They claim that cocaine was introduced into the undercover operation to expose them to longer sentences. In support of this argument, appellants rely on the testimony of Agent James Mallone of the Drug Enforcement Agency in Kentucky, who testified that within the past five years his office had seized no cocaine from either of the counties where the appellants were officers.
 
 
 13
 The FBI's initial investigation focused on Mann, whom they suspected of taking payoffs from marijuana growers and bootleggers. The initial investigation expanded to include other law enforcement officers and cocaine distribution once Mann recruited the other officers into the operation. According to the testimony of agents Poole and Keller, they introduced cocaine into the operation because they believed they had to justify to appellants their need for so much police protection and assistance. There was also evidence that appellants Mann and Drake were aware of, and in fact, were aiding cocaine distributors in Kentucky.
 
 
 14
 2. Preexisting Police Involvement in the Criminal Enterprise
 
 
 15
 The Barger court explained that the second factor in determining whether government conduct is outrageous has been articulated in two ways; (1) "whether the criminal enterprise preexisted the police involvement"; and (2) "whether the government provided the impetus for the criminal scheme." Barger, 931 F.2d at 363 (citing United States v. Norton, 700 F.2d 1072, 1075 (6th Cir.), cert denied, 461 U.S. 910 (1983), and United States v. Robinson, 763 F.2d 778, 785 (6th Cir.1985)).
 
 
 16
 Appellants contend that there was no preexisting criminal enterprise among them prior to the FBI's undercover operation and that the FBI provided the impetus for the cocaine operation. Appellants rely on Agent Poole's testimony that the criminal enterprise the FBI was investigating in Southeastern Kentucky was public corruption in which drugs were used as a means of facilitating the investigation. Despite agent Poole's testimony, the record shows that the FBI had intelligence information indicating that both cocaine and marijuana were problems in Southeastern Kentucky.
 
 
 17
 3. Government Control Over the Criminal Enterprise and the Impact of Police Activity on the Commission of the Crime
 
 
 18
 Appellants claim that the FBI exercised total control over the drug operation from start to finish. Specifically, they contend that the FBI's control over the drug operation is what resulted in the commission of the crimes involving cocaine. The United States concedes that their agents maintained physical control over the cocaine, but presented substantial evidence to the jury that each of the appellants assisted in the operation. Specifically, the United States presented evidence that the appellants advised them on how to conduct the air drops of cocaine, including what locations and times to use for the drops, and how many drops should be made.
 
 
 19
 This Circuit held in United States v. Brown, 635 F.2d 1207, 1212 (6th Cir.1980), that "Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction," and that such a defense "would rarely if ever be available." Brown, 635 F.2d at 1212 (citing Hampton v. United States, 425 U.S. 484, 495 n. 7 (1975) and United States v. Leja, 563 F.2d 244, 246 n. 4 (6th Cir.1977), cert. denied, 434 U.S. 1074 (1978)). This Circuit has yet to decide a case where it has found that the Barger test has been met. Contrary to appellants' claims, they have not sufficiently established either of the four Barger factors that would justify a finding that the FBI's conduct in the undercover operation was outrageous and therefore in violation of their due process rights. Based on the evidence and testimony presented at trial, the district court properly allowed the jury to decide the appellants' innocence or guilt.
 
 B. The Hobbs Act
 
 20
 Appellants contend that the government failed to prove that they induced payoffs from the undercover agents under color of official right, as required for a conviction under the Hobbs Act, 18 U.S.C. § 1951. As support for this argument, appellants principally rely on United States v. Jenkins, 902 F.2d 459 (6th Cir.1990).
 
 
 21
 In Jenkins, this Circuit went to great lengths to make it clear that "inducement" is an essential element that must be established to prove a Hobbs Act violation, distinguishing that case from United States v. Butler, 618 F.2d 411 (6th Cir.) cert denied, 447 U.S. 927 (1980), which raises some doubt as to this matter. However, in Evans v. United States, the Supreme Court held that an affirmative act of inducement by a public official, such as a demand or a request, need not be proven to establish a Hobbs Act violation. See Evans, --- U.S. ----, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). Therefore, appellants' reliance on Jenkins is unpersuasive.
 
 
 22
 The United States concedes that their agents, posing as drug dealers, approached the appellants and offered them payoffs in exchange for their protection and assistance. What amounts to the necessary inducements supporting appellants' convictions under the Hobbs Act are their promises to the agents and acceptance of payoffs in exchange for their assistance as law enforcement officers. In light of Evans, appellants' claim that there is no Hobbs Act violation because they did not solicit the payments from the agents, but only passively accepted the money, has no merit. Their attempt to equate the element of inducement under the Hobbs Act with specific demands or solicitations is unpersuasive and inconsistent with the manner in which the Hobbs Act has been applied.
 
 
 23
 C. Sentencing on the Cocaine Related Convictions
 
 
 24
 Appellants argue that because the government needlessly introduced cocaine into the investigation, the district court should not have considered the cocaine offenses in sentencing them.
 
 
 25
 Mann argues that the district court abused its discretion by not departing downward from 18 U.S.C. § 3553(b) to the Hobbs Act offense guidelines. Title 18 U.S.C. § 3553(b) provides that a sentence outside the guidelines may be imposed if the sentencing court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Mann contends that the government's control over the cocaine justifies a downward departure pursuant to 18 U.S.C. § 3553(b). Noe contends that because of the total control the FBI exercised over the cocaine, he should have been sentenced under U.S.S.G. § 1B1.3, which provides that "only acts and omissions committed or aided by the defendant would otherwise be accountable." Noe also relies on United States v. Moreno, where this Circuit held that a member of a conspiracy "should only be held accountable for reasonable foreseeable criminal conduct which is within the scope of the criminal activity he agreed to jointly undertake." 899 F.2d 465 (6th Cir.1990). The evidence presented by the United States at trial shows that although Mann and Noe, as well as the other appellants, were never in possession or control of the cocaine, their involvement in the transaction was sufficient to justify their sentences for the cocaine conspiracy charges.
 
 D. Multiple Conspiracy Instruction
 
 26
 Appellants contend that the district court erred by failing to give multiple conspiracy instructions on the Hobbs Act conspiracy. The appellants, however, did not object at trial to the district court's instructions on the Hobbs Act offenses and thereby failed to preserve this issue for appeal. Rule 30 of the Federal Rules of Criminal Procedure states:
 
 
 27
 No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection. (Emphasis added.)
 
 
 28
 In United States v. Sturman, 951 F.2d 1466, 1475 (6th Cir.1991), cert denied, --- U.S. ----, 112 S.Ct. 2964 (1992), this Circuit stated that the Federal Rules of Criminal Procedure "clearly indicates that a specific objection must be made with regard to charge requests."
 
 
 29
 In the instant case, after the court gave its instructions, counsel was asked whether they had any objections or corrections to the instructions as they were given. The record shows that there was no reply and that counsel for McIntosh nodded negatively in response to the court's question. Based on the failure of the appellants to raise an objection to the instructions when asked by the court, they failed to preserve this issue for appeal. See Sturman, 951 F.2d at 1475. Accordingly, we did not address the merits of appellants' argument.
 
 E. Enhancement for Possession of a Firearm
 
 30
 Appellants object to the enhancement of their sentence for possession of a firearm, claiming that their possession of firearms was incidental to their duties as law enforcement officers. Appellants also claim that the guidelines permit such an enhancement only where there is a likelihood that the firearm could have been used to carry out the crime.
 
 
 31
 The United States presented direct evidence at trial linking appellants Noe and McIntosh to the possession of a firearm during acts in furtherance of the conspiracy. At sentencing, the court found that the weapons carried by appellants were connected with the drug operation and conspiracy. With regard to the likelihood that the firearms would be used in the course of the conspiracy, the evidence establishes that someone could have easily been killed had they attempted to interfere with the drug operation, or if the appellants discovered the true identity of the agents.
 
 
 32
 The district court's finding on this issue is supported by this Circuit's decision in United States v. Tisdale, 952 F.2d 934, 938 n. 3 (6th Cir.1992) (citing U.S.S.G. § 1B1.3, Application Note 1 (November 1, 1990)), where we held that co-conspirators are accountable for all "reasonably foreseeable" conduct of their fellow conspirators under the Sentencing Guidelines. See Pinkerton v. United States, 328 U.S. 640, 648 (1946).
 
 F. Enhancement Based on Acquitted Conduct
 
 33
 McIntosh was convicted of attempted distribution of a controlled substance in violation of 21 U.S.C. § 846, as contained in count 37 of the indictment. He was acquitted, however, on count 35 of the indictment, which charged him with conspiracy to distribute, and possession with the intent to distribute, cocaine and marijuana, in violation of 21 U.S.C. § 846. Appellant McIntosh was acquitted of attempted cocaine distribution offenses charged in counts 36, 38, 39, 40 and 41 of the indictment. He objects to the inclusion of the conduct for which he was acquitted in the calculation of his sentence. He argues that he should only be held accountable for the two kilograms of cocaine that appeared in count 37 of the indictment, of which he was convicted.
 
 
 34
 This Circuit has held in several cases that the sentencing guidelines permit the enhancement of sentences based on drug quantities involved in an overall drug conspiracy or transaction, including quantities that were the basis of dismissed or acquitted charges. See United States v. Sailes, 872 F.2d 735 (6th Cir.1989); United States v. Smith, 887 F.2d 104 (6th Cir.1989); United States v. Ykema, 887 F.2d 697 (6th Cir.1989), cert. denied, 493 U.S. 1062 (1990). In fact, in a recent en banc decision this Circuit stated that "[t]he law in this Circuit is clear that a base offense level is determined by the amount of drugs included in the defendant's relevant conduct, not just amounts in the offense of conviction or charged in the indictment." United States v. Davern, 970 F.2d 1490 (6th Cir.1992) (en banc ).
 
 G. Perjury
 
 35
 McIntosh's defense at trial was that he became involved in the FBI's undercover operation only because he was conducting his own criminal investigation in his role as Sheriff of Owsley County. The jury, however, obviously did not believe McIntosh's story because they convicted him on several counts of the indictment. Accordingly, the district court assessed McIntosh a two level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 because he gave false testimony regarding his involvement in the conspiracy.
 
 
 36
 McIntosh objects to this enhancement, arguing that the application of § 3C1.1 infringes on his right to testify. The district court's enhancement, however, is supported by this Circuit's decision in United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, 493 U.S. 899 (1989), where the court held that "there is no constitutional right to testify untruthfully at trial," and that there is "no constitutional right to commit perjury either as a defendant testifying on his or her own behalf or as a witness testifying before a grand jury." Acosta-Cazares, 878 F.2d at 953.
 
 H. Adjustment for Role in the Offense
 
 37
 McIntosh argues that his sentence should not have been enhanced pursuant to U.S.S.G. § 3B1.3 for his role in the Hobbs Act offense. Section 3B1.3 of the guidelines provides:
 
 
 38
 If the defendant abused a position of public or private trust, or used special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).
 
 
 39
 He argues that this enhancement is based solely on the fact that he is a law enforcement officer and not because of his actual role in the offense. McIntosh relies on his Presentence Report, where the probation officer stated that McIntosh did not occupy either an aggravating or mitigating role in the offense, but either abused a position of public trust or used a special skill in committing the offense. McIntosh claims this enhancement is prohibited by § 3B1.1 because abuse of a "position of trust" is included in the base offense level and specific offense characteristic of the Hobbs Act.
 
 
 40
 McIntosh's sentence, however, was enhanced based on the attempted drug distribution offense not the Hobbs Act offense. McIntosh's attempted distribution offense was enhanced by two levels because McIntosh abused a position of trust and used a special skill in facilitating the drug distribution ring. Neither abuse of a position of trust nor use of a special skill is included in the base level or specific offense characteristic of the attempted distribution offense. Therefore, the two level increase of McIntosh's sentence was proper under § 3B1.3.
 
 I. Entrapment
 
 41
 Noe argues that he was entrapped because he was selected by the government as a target without any reasonable individualized suspicion that he was likely to engage in illegal activity. Noe contends that the facts underlying his entrapment defense fall within the Supreme Court's recent decision in Jacobson v. United States, 112 S.Ct. 1535, (S.Ct.1992).
 
 
 42
 In Jacobson, the Supreme Court overturned a conviction under the Child Protection Act of 1984 because the government "overstepped the line between setting a trap for the 'unwary innocent' and the 'unwary criminal.' " Jacobson, 112 S.Ct. 1535, 1537. The defendant in Jacobson was the target of over two years of repeated government mailings offering to sell him child pornography. The Court held that the government's conduct amounted to entrapment. However, the Court distinguished government entrapment from lawful government investigations, noting that it is not entrapment for the government to provide an individual "with the opportunity to commit a crime," so long as "the criminal act amply demonstrates the defendant's predisposition." Jacobson, 112 S.Ct. 1535, 1541.
 
 
 43
 In the instant case, there is no evidence that the government's conduct as to Noe amounts to entrapment. The evidence shows that not only did Noe promptly accept the payoffs from the agents, but he also took part in recruiting other officers into the conspiracy. Furthermore, it was not the agents that solicited Noe's assistance in the drug operation, but appellant Mann, acting on his own initiative.
 
 
 44
 Noe also objects to the district court's entrapment instruction, arguing that the words "beyond a reasonable doubt" should have been at the end of the instruction. Viewing the district judge's instruction on entrapment as a whole, we believe the jury was sufficiently informed that the government had the burden of proving beyond a reasonable doubt that Noe was not entrapped. See Bagherzadeh v. Roeser, 825 F.2d 1000, 1003 (6th Cir.1987).
 
 
 45
 J. Amount of Cocaine for Purposes of Sentencing
 
 
 46
 In sentencing Noe, the district court determined the base offense level by holding Noe accountable for twelve kilograms of cocaine, although only two real kilograms were involved in the entire operation. The same two kilograms of real cocaine, however, were used by the FBI for six different transactions throughout the drug operation. Nevertheless, Noe argues that he should be held accountable for only two kilograms of cocaine rather than twelve.
 
 
 47
 In United States v. Kottmyer, 961 F.2d 569, reh'g, en banc, denied, United States v. Kottmyer, 1992 U.S.App. LEXIS 12984 (6th Cir.1992), this Circuit held that where attempt or conspiracy are charged under 21 U.S.C. § 846, it does not matter whether the drugs underlying the offense are real or even exist at all. Kottmyer, 961 F.2d at 574. Therefore, the district court was correct to sentence Noe based on twelve kilograms of cocaine because he participated in six separate transactions each involving two kilograms of cocaine.
 
 
 48
 K. Enhancement for High Level Decision Making Position
 
 
 49
 The district court erred in enhancing Noe's sentence by an eight level increase under U.S.S.G. § 2C1.1(b)(2)(B) for being a high-level decision maker. Noe is not a high-level decisionmaker. He is the appointed chief of police of Beattyville, Kentucky, which has a population of only 1,000 and a police force consisting of three officers. Furthermore, Noe works a shift just like his two fellow officers and all important decisionmaking is done by the mayor and city council of Beattyville. Accordingly, we reverse the enhancement of Noe's sentence under § 2C1.1(b)(2)(B), and remand Noe's case for resentencing consistent with this opinion.
 
 III.
 
 50
 For the foregoing reasons, we AFFIRM in part and REVERSE in part the convictions and sentences imposed by the district court for the Eastern District of Kentucky.