**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis Ray KOTTMYER (91–5826);
William Talmadge Upton (91–5827),
Defendants–Appellants.**

**Nos. 91–5826, 91–5827.**

United States Court of Appeals,
Sixth Circuit.

Argued March 16, 1992.

Decided April 9, 1992.

Rehearing En Banc Denied May 27, 1992.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Jacquelyn A. Jess, Asst. U.S. Atty. (argued and briefed), Covington, Ky., for plaintiff-appellee.

R. Scott Croswell, III, Elizabeth E. Agar, (argued and briefed), Croswell & Adams, Cincinnati, Ohio, for defendant-appellant Dennis Ray Kottmyer.

Before: GUY and RYAN, Circuit Judges; and JOINER, Senior District Judge.*

---

* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

RALPH B. GUY, Jr., Circuit Judge.

The defendants appeal their convictions for conspiracy and attempt to possess cocaine with intent to distribute. Both defendants argue that the district court should have dismissed the charges with prejudice after finding a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161, *et seq.* In addition, one defendant argues that the evidence was insufficient to support his conviction, and the other defendant claims that the district court sentenced him under an inapplicable statutory minimum provision. We affirm.

## I.

The defendants, Dennis Kottmyer and William Upton, were arrested as a result of a government sting operation aimed at Jesse Bramel, a Kentucky drug dealer. The Drug Enforcement Agency offered the services of an informant, Christian Klump, to the Northern Kentucky Narcotics Unit in order to apprehend narcotics violators in Northern Kentucky. After Klump initiated contact with Bramel, Bramel told Klump that he was interested in setting up a two-kilogram cocaine sale to other, unnamed persons. Bramel testified at trial that he then discussed the matter with Upton.

The agents working with Klump authorized him to set up the transaction with Bramel. On May 8, 1990, Klump, carrying a hidden transmitter, met with Bramel at a restaurant. Bramel told Klump that he had two customers who wished to buy two kilograms of cocaine. The next day, Klump and Bramel ironed out more details of the transaction over the telephone and agreed that the purchase price would be $24,000, including a $5,000 commission to be split between Klump and Bramel. Bramel testified that he confirmed these arrangements with Upton, who informed him that someone else would provide the money.

On May 10, Klump drove to the arranged meeting place, a restaurant parking lot. He again was wired for sound. He carried two packages in the trunk of his car, each containing one kilogram of pure baking soda. Bramel met Klump in the parking lot and, after making final arrangements with Klump, made two telephone calls.

A short time later, Upton and Kottmyer arrived in Kottmyer's car. Bramel testified that he had never met Kottmyer before. The two men got into the car with Klump and Bramel. Upton handed Klump a bag of money. As Klump started to count it, Kottmyer said that "[t]here's 26 there; you don't need to count it." Bramel suggested going to Upton's farm to complete the transaction. Upton and Kottmyer then returned to Kottmyer's car, taking the bag of money with them. Before they could leave the parking lot, the agents arrested Upton, Kottmyer, and Bramel, and seized the bag containing $26,000 from Kottmyer's car.

After their arrest, the three men were placed in a jail cell together overnight. Bramel testified that, after he told Upton he was upset about the arrest, Kottmyer asked, "[W]ell, how would you like to be out the money on top of it[?]"

Six days later, a federal grand jury returned a five-count indictment against Upton, Kottmyer, and Bramel. Upton and Kottmyer, represented jointly, pleaded not guilty. In August 1990, Bramel changed his plea to guilty and agreed to testify against Upton and Kottmyer.

In November 1990, Upton and Kottmyer moved to dismiss the indictment for violation of the Speedy Trial Act. In December, the district court dismissed the indictment without prejudice.

In January 1991, Upton and Kottmyer were re-indicted on two of the original five counts: conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and aiding and abetting the attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Three months later, a jury convicted Upton and Kottmyer on both counts. The district court sentenced Kottmyer to 65 months' imprisonment and Upton to 10 years' imprisonment on each count, to be served concurrently. These appeals followed.

## II.

Upton and Kottmyer both argue that the district court abused its discretion by dismissing the indictment without prejudice. Under the provisions of the Speedy Trial Act, the trial was required to commence within 70 non-excludable days of the defendants' first appearance. 18 U.S.C. § 3161(c)(1).

There is no dispute that 111 non-excludable days elapsed between the defendants' arraignment and the filing of their motion to dismiss the indictment. There is also no dispute that, under 18 U.S.C. § 3162(a)(2), the district court was required to dismiss the indictment. The only issue before us is whether the court erred by dismissing the indictment without prejudice.

The Act provides guidance to a district court faced with that decision:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2).

On review, we apply a modified abuse of discretion standard to the district court's decision. Since "Congress has declared that a decision will be governed by consideration of particular factors," we must ensure that the district court "carefully consider[ed] those factors as applied to the particular case and ... clearly articulate[d] their effect." *United States v. Taylor*, 487 U.S. 326, 336, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988). If the district court properly considered the statutory factors, its "judgment of how opposing considerations balance should not lightly be disturbed." *Id.* at 337, 108 S.Ct. at 2420.

Our review reveals that the district court did properly consider the statutory factors. As to the first factor, the court held that a conspiracy to distribute two kilograms of cocaine is "undeniably a serious offense," a finding conceded by the defendants' trial counsel.[1]

The court next considered the reasons for the delay. The first 15 non-excludable days elapsed between the defendants' arraignment and the filing of Upton's notice of his intention to claim an insanity defense. Six days after receiving that notice, the government moved to have Upton examined. Counsel for the government erroneously drafted the proposed order to require an examination of Upton's competence to stand trial instead of his mental state at the time of the offense. One month later, the district court signed the order, requiring the United States Marshal to transport Upton to a psychiatric facility outside of the district. Upton was returned to the district on August 15, 1990.

However, the court was not notified of Upton's return. The case lay dormant for three months. Finally, on its own motion, the court ordered a hearing on Upton's competency, which was held on November 19, 1990. Four days later, the defendants moved for dismissal.

The court ruled that the 96 days between Upton's return to the district and his competency hearing were non-excludable. In deciding to dismiss without prejudice, the court placed most of the blame for the delay on itself for failing to keep track of the case's progress. The court also blamed the government for failing to notify the court of Upton's return to the district, and blamed the defendants for failing to bring the delay to the court's attention.[2]

Thus, the record establishes that the court considered the reasons for the delay and articulated its findings. The court

---

1. The defendants argue on appeal that the gravity of the charged offense was lessened because the government created the crime by offering cocaine for sale. We are not persuaded that this fact alters the conclusion that the offense is serious.

2. The defendants correctly point out that they had no duty to bring the delay to the court's attention. However, the district court did not abuse its discretion by pointing out that the delay could have been avoided if the defendants had raised the matter earlier.

found that the delay was due mostly to carelessness on the part of itself and the government. While intentional dilatory conduct or a pattern of neglect by the government "would clearly have altered the balance," *Taylor*, 487 U.S. at 339, 108 S.Ct. at 2421, the defendants have not pointed to any evidence that would support such a finding.[3]

The third statutory factor is the impact of reprosecution on the administration of the Act and justice. This factor requires the district court to consider whether the delay has prejudiced the defendants and whether dismissal with prejudice is warranted to ensure future compliance with the Act. *See Taylor*, 487 U.S. at 340–42, 108 S.Ct. at 2421–22.

The court found that the defendants had failed to show how the delay prejudiced their defenses. On appeal, the defendants argue that the delay allowed the government more time to convince Bramel to plead guilty and testify against Upton and Kottmyer. However, Bramel had already made such an agreement before the 96-day delay commenced.

The court next concluded that dismissal with prejudice would only affect the prosecutor in this case and would not serve the interests of the public. Since the government's conduct was apparently unintentional and since the blame was shared by the court, this finding is supported by the record. *Cf. United States v. Giambrone*, 920 F.2d 176, 181–82 (2d Cir.1990) (affirming dismissal with prejudice where government's "extremely lax" conduct produced repeated lengthy delays and where U.S. Attorney had engaged in pattern of neglect in numerous cases).

Having articulated its findings on each of the three statutory factors, the court concluded that dismissal without prejudice was appropriate. That balancing "should not lightly be disturbed." *Taylor*, 487 U.S. at 337, 108 S.Ct. at 2420. The first factor, the seriousness of the offense, and the third factor, the lack of prejudice or a need

to deter future neglect, weigh in favor of the government. The second factor, the government's neglect, weighs in favor of the defendants, but, without evidence of intentional delays or a pattern of such conduct, the court did not abuse its discretion by allowing reprosecution. *Cf. United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987) (affirming district court's refusal to dismiss with prejudice when other factors outweighed government's "indefensible" conduct). We therefore affirm the district court's decision to dismiss the indictment without prejudice.

### III.

■ Kottmyer argues that the evidence adduced at trial was insufficient as a matter of law to support his conviction. We review the evidence in the light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Martin*, 920 F.2d 345, 348 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991).

■ Kottmyer places much emphasis on the fact that he had never met Bramel until the parking lot encounter. However, Bramel testified that Upton had told him that someone else would supply the money for the transaction. When Upton and Kottmyer arrived, Kottmyer accompanied Upton to Klump's car. When Upton passed the bag of money to Klump, Kottmyer told Klump that the bag contained "26," and that there was no need to count it. Finally, in a conversation with Bramel after his arrest, Kottmyer indicated that he had owned the $26,000 that had been seized.

We hold that this evidence, viewed favorably to the government, is sufficient for a rational trier of fact to conclude that Kottmyer conspired with others to possess cocaine with intent to distribute and aided and abetted an attempt to possess cocaine

---

**3.** Upton objects to the court's alleged reliance on the unsworn representations of government counsel. Even if the court had ignored the government's explanations, however, there is no evidence of the type of government conduct that would alter the balance.

with intent to distribute. We therefore affirm Kottmyer's conviction.

## IV.

Upton contends that the district court erroneously sentenced him under a statutory provision that required the imposition of a mandatory minimum sentence of 10 years' imprisonment. Under the Sentencing Guidelines, Upton would have been sentenced within a range of 77 to 96 months.

Both the attempt and conspiracy counts charged violations of 21 U.S.C. § 846. That section provides:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

The penalties for possession of cocaine with intent to distribute are provided in 21 U.S.C. § 841(b). The mandatory minimum provision states, in relevant part:

> In the case of a violation ... involving—
>
> ....
>
> (ii) 500 grams or more of *a mixture or substance containing a detectable amount of—*
>
> ....
>
> (II) cocaine....
>
> ....
>
> such person shall be sentenced to a term of imprisonment which may not be less than 5 years.... If any person commits such a violation after one or more prior convictions ... for a felony under ... [the] law of a State ... relating to narcotic drugs ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years....

21 U.S.C. § 841(b)(1)(B) (emphasis added).

Upton had been convicted of a drug felony in Texas. Over Upton's objection, the district court applied the mandatory minimum provision of section 841(b)(1)(B) and sentenced him to 10 years' imprisonment on each count, to be served concurrently.[4]

Upton argues that the mandatory minimum is inapplicable because his offense did not involve "a mixture or substance containing a detectable amount of ... cocaine." Instead, Upton points out, had the agents allowed the transaction to proceed, he would have received two kilograms of pure baking soda.

■ If the transaction had proceeded, Upton could not have been convicted of possession of cocaine because he would have possessed pure baking soda. However, Upton was convicted of *attempt* and *conspiracy* to possess cocaine. Even if Upton had received the baking soda, he would still be guilty of attempting and conspiring to possess cocaine. The evidence was uncontroverted that Upton attempted and conspired to possess more than 500 grams of a substance or mixture containing a detectable amount of cocaine. Section 846 requires the imposition of the same penalties as the completed offense. *See United States v. Hodges*, 935 F.2d 766, 771 (6th Cir.) (applying mandatory minimum of section 841(b)(1)(B) to conspiracy conviction under section 846), *cert. denied*, — U.S. —, 112 S.Ct. 251, 116 L.Ed.2d 206 (1991). Therefore, it does not matter whether the packages Klump carried contained pure cocaine, pure baking soda, a mixture, or whether they even existed at all. Accordingly, we hold that the district court correctly applied the mandatory minimum provision in sentencing Upton.

AFFIRMED.

---

**4.** Under that same provision, Kottmyer, who had no prior felony drug convictions, was subject to a mandatory minimum of five years' imprisonment. The mandatory minimum did not affect his sentence, however, because his guideline range, 63 to 78 months, exceeded the statutory minimum. Kottmyer does not appeal his two concurrent 65–month sentences.