36 F.3d 1098
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Orosco MENDOZA, Jr.; Robert Mendoza, Defendants-Appellants.
 Nos. 93-6228, 93-6356.
 United States Court of Appeals, Sixth Circuit.
 Sept. 27, 1994.
 
 Before: JONES AND BATCHELDER, Circuit Judges; and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants-Appellants Richard Orosco Mendoza and Robert Mendoza appeal the district court's dismissal of their original indictment without prejudice. Robert Mendoza also appeals the district court's denial of his motion to suppress evidence and the 220-month sentence imposed by the district court after his plea of guilty. Because these claims are without merit, we AFFIRM both convictions and Robert Mendoza's sentence.
 
 I.
 
 2
 On December 6, 1991, Shelby County Deputy Sheriff Mark Kellerhall observed a 1983 Dodge Ram truck, driven by Appellant Robert Mendoza and occupied by Appellant Richard Mendoza, travelling east along Interstate 40, just outside the Memphis city limits. Deputy Kellerhall stopped the defendants for speeding after his radar equipment clocked their vehicle travelling 63 mph in a 55 mph zone. At the time of the stop, Deputy Kellerhall had with him a reporter and a cameraman for the national television show "Cops." Portions of this entire incident were video taped and subsequently aired for a national television audience. This video was also played and introduced into Court.
 
 
 3
 After being stopped, Robert Mendoza exited the vehicle and approached the squad car. Kellerhall asked Robert Mendoza for his driver's license and his vehicle registration or proof of automobile insurance. Robert Mendoza produced a valid driver's license but told Kellerhall that the registration and proof of insurance were in the truck. Robert Mendoza then stated that he and his brother were on their way to visit the Vietnam War Memorial in Washington, D.C.
 
 
 4
 When Kellerhall approached the vehicle to obtain the registration and proof of insurance, he observed Richard Mendoza lying down in the rear of the vehicle. Kellerhall testified that he also smelled the strong odor of raw marijuana coming from the vehicle, and that he knew the smell of marijuana because he had smelled it on many occasions. Kellerhall awakened Richard Mendoza and asked him to produce a copy of the registration or insurance. Mendoza was unable to find these papers. Upon questioning, Richard Mendoza indicated that he and Robert Mendoza were going to Virginia to visit family and friends.
 
 
 5
 Based on the smell of marijuana and the conflicting stories about their destination, Kellerhall asked Robert Mendoza if he could search the vehicle and had Mendoza sign a consent form. Kellerhall testified that he twice advised Robert Mendoza that he had a right to refuse to sign the consent form but that if he refused both he and the vehicle would be detained until a Canine Unit arrived at the scene. Although Robert Mendoza signed the consent form, he asserts that he felt coerced. The subsequent search of the vehicle produced approximately fifty pounds of raw marijuana in numerous tape-wrapped bundles and two large containers of black tar heroin. A .25 caliber pistol was also found. Robert and Richard Mendoza were both arrested.
 
 
 6
 On December 17, 1991, Richard and Robert Mendoza were indicated for possession of approximately 42 pounds of marijuana with intent to distribute (Count 1), and with possession of heroin with intent to distribute (Count 2), both in violation of 21 U.S.C. Sec. 841(a)(1) (1988) and 18 U.S.C. Sec. 2 (1988). They were also charged with one count of the carrying and use of a firearm during and in relation to a drug trafficking offense (Count 3) in violation of 18 U.S.C. Sec. 924(c) (1988 & Supp V 1993).
 
 
 7
 On January 22, 1992, Robert Mendoza filed a motion to suppress. In his motion, Robert Mendoza asserted that the search of the vehicle violated the Fourth Amendment of the United States Constitution, because it was not conducted pursuant to a valid warrant.
 
 
 8
 On March 30, 1992, the magistrate found that the search was reasonable and that "any 'coercion' [of Robert Mendoza] was caused by the realities of the situation, not by the conduct of Deputy Kellerhall." J.A. at 78. Accordingly, the magistrate recommended that the district court deny the motion. On August 10, 1992, the district court denied the motion to suppress.
 
 
 9
 On January 24, 1992, Robert Mendoza filed a motion to sever, desiring a transfer under Federal Rule of Civil Procedure 20 to the United States District Court for the Western District of Texas, San Antonio, for plea and sentencing. The motion to sever was granted on July 10, 1992. On July 14, 1992, the court entered an order transferring Robert Mendoza to the United States District Court for the Western District of Texas, San Antonio, for plea and sentencing. However, after the appellant refused to plead the court entered an order withdrawing the Rule 20 transfer and the order for severance.
 
 
 10
 On December 1, 1992, Richard Mendoza filed a motion to dismiss the indictment with prejudice due to violations of the Speedy Trial Act. 18 U.S.C. Sec. 3161(c)(1) (1988). The motion was joined by Robert Mendoza on March 2, 1993.[2] Appellants claimed that a total of one hundred and eighty-eight (188) non-excludable days had passed since the time that the indictment was returned.
 
 
 11
 In response to the motion to dismiss the indictment, the government argued that seventy (70) non-excludable days had not passed since the date of the indictment. The government agreed that there were thirty four (34) non-excludable days between December 18, 1991, and January 21, 1992, but claimed that the balance of the time was excludable. In the alternative, the government contended that even if the court concluded that the speedy trial clock had lapsed, the indictment should be dismissed without prejudice.
 
 
 12
 On March 9, 1993, the court dismissed without prejudice the indictment as to Richard Mendoza. On March 18, 1993, a superseding indictment which named both Richard and Robert Mendoza was returned by the grand jury. The superseding indictment was identical to the dismissed indictment. On April 19, 1993, Robert Mendoza filed a motion to dismiss the superseding indictment. On April 26, 1993, the court dismissed without prejudice the original indictment as to Robert Mendoza, but found that the superseding indictment should not be dismissed.
 
 
 13
 On June 1, 1993, Robert Mendoza entered a guilty plea to all three counts, reserving the right to appeal the court's dismissal of the original indictment without prejudice, and the court's denial of his motion to suppress evidence. Richard Mendoza pled guilty to Counts One and Two of the indictment on the same date. On August 31, 1993 Robert Mendoza was sentenced to consecutive terms of 160 months imprisonment on Counts One and Two and to 60 months imprisonment on Count 3, plus 3 5-year terms of supervised release to be served concurrently. Richard Mendoza was sentenced to 53 months imprisonment followed by a 4 year term of supervised release on Counts One and Two. These appeals followed.
 
 II.
 
 14
 Appellants claim that the district court erred in dismissing without prejudice the original indictment. Additionally, Robert Mendoza claims that the district court erred in denying his motion to suppress evidence and in sentencing him as a career offender with a Criminal History Category VI, based on prior convictions for drug offenses committed in 1972 and 1978.
 
 
 15
 The decision whether to dismiss an indictment with or without prejudice for violation of the Speedy Trial Act remains within the sound discretion of the trial court. U.S. v. White, 985 F.2d 271, 274 (6th Cir.1993). On review, this court applies a modified abuse of discretion standard to the lower court's decision. United States v. Kottmyer, 961 F.2d 569, 572 (6th Cir.1992). Because
 
 
 16
 "Congress has declared that [the] decision will be governed by consideration of particular factors," we must ensure that the district court "carefully consider[ed] those factors as applied to the particular case and ... clearly articulate[d] their effect." ... If the district court properly considered the statutory factors, its "judgment of how opposing considerations balance should not lightly be disturbed."
 
 
 17
 Id. (quoting United States v. Taylor, 487 U.S. 326, 336 (1988)).
 
 
 18
 With respect to the denial of Appellant's motion to suppress evidence, we review the district court's factual findings for clear error. United States v. Anderson, 923 F.2d 450, 454 (6th Cir.1991) cert. denied, 499 U.S. 980 (1991). Findings of fact are deemed to be clearly erroneous when the "reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). A district court's conclusions of law are reviewed de novo. United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990) cert. denied 500 U.S. 933 (1991). Credibility determinations regarding whether a defendant consented to a search are upheld unless clearly erroneous. United States v. Taylor, 956 F.2d 572, 577-78 (6th Cir.1992) cert. denied 113 S.Ct. 404 (1992).
 
 
 19
 Finally, a defendant may only appeal a guideline sentence under the limited circumstances outlined in 18 U.S.C. Sec. 3742. In assessing whether a district court's imposition of a guidelines sentence is in error, this court must determine whether the sentence: (1) was imposed in violation of the law; (2) was imposed as a reuslt of an incorrect application of the guidelines; (3) is outside the applicable guideline range and is unreasonable in light of statutory factors; or (4) was imposed for an offence for which there is no sentencing guideline and is plainly unreasonable. See 18 U.S.C. Sec. 3742(a) (1988). The court applies a clearly erroneous standard of review to the district court's factual findings with respect to the Sentencing Guidelines. United States v. Watkins, 994 F.2d 1192, 1195 (6th Cir.1993); United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 III.
 A.
 
 20
 In determining whether to dismiss with or without prejudice the lower court was required to consider three factors in exercising its discretion: (1) the seriousness of the offense, (2) the circumstances leading to the dismissal, and (3) the effect of reprosecution on the administration of justice and the Act. See 18 U.S.C. Sec. 3162(a)(1) (1988). Appellants contend that the lower court abused its discretion in considering these factors and dismissing the indictment without prejudice. We disagree.
 
 
 21
 On the issue of seriousness, the lower court found that, "this is about as serious an offense as we could get ... [C]learly the seriousness of the offense weighs in favor of allowing reprosecution by the government." J.A. at 212. Appellants acknowledge that this circuit has considered drug trafficking crimes to be serious. Richard Mendoza Br. at 16 (citing Kottmyer, 961 F.2d at 572 (6th Cir.1992); United States v. Ramirez, 973 F.2d 36, 38 (1st Cir.1992)).
 
 
 22
 With respect to the facts and circumstances surrounding the dismissal the lower court found that both the government and Robert Mendoza were partially responsible for the delay. The court found that the case was untracked as a result of the withdrawal and appointment of counsel for Robert Mendoza and because of his Rule 20 transfer and subsequent order withdrawing the transfer after the defendant refused to plea. J.A. at 96 n. 1. In cases where there are multiple defendants, "[t]he excusable day[s] of one co-defendant may be ascribed to the all defendants." United States v. Blackmon, 874 F.2d 378, 380 (6th Cir.1989), cert. denied, 493 U.S. 859 (1989). Thus, the court found that the delay of the government was not a result of bad faith, see J.A. at 212-13, and concluded that dismissal without prejudice was appropriate.
 
 
 23
 Finally, the lower court considered the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice.
 
 
 24
 Now, I think allowing reprosecution has some negative effect on the Administration of the Speedy Trial Act, even in the context of the most serious offenses. If we didn't recognize that, then the Speedy Trial Act would have no effect in serious cases ... The next question in that factor is the impact of reprosecution on the administration of justice. And certainly the Court has to be aware and is charged with an awareness of the public interest in having these charges pursued. This dismissal would have a negative impact on the administration of justice if that dismissal was with prejudice.
 
 
 25
 Id. at 214.
 
 
 26
 The court then pronounced its ruling: "Balancing all of those factors, and after having heard the argument of counsel ... I'm going to dismiss this without prejudice." Id.
 
 
 27
 We find that the lower court clearly considered and balanced each of the relevant factors enumerated by Congress. Appellants point to nothing in the record which would reflect that the court was relying on clearly erroneous findings of fact. Essentially, Appellants' basis for disputing the court's ruling is that they disagree with it. This is insufficient to warrant reversal of the district court's decision.
 
 B.
 
 28
 Robert Mendoza asserts that the district court erred in denying his motion to suppress. Specifically, Mendoza asserts that the district court's determination that he voluntarily submitted to the search was clearly erroneous. This claim is without merit.
 
 
 29
 Mendoza argues that there was no reason for Deputy Kellerhall to detain him while the deputy went to the vehicle to look for registration or insurance papers because Mendoza had already produced a valid driver's license. Mendoza, therefore, asserts that the deputy went to the vehicle for the sole purpose of "smelling what he could smell." Robert Mendoza Br. at 14.
 
 
 30
 The appellant does not dispute that he exceeded the 55 mph speed limit, nor does he claim the initial stop to have been pretextual. Mendoza was required by Tennessee law to have on his person or in his vehicle a valid driver's license and a valid registration or facsimile. Tenn.Code Ann. Secs. 55-4-108, 55-50-351 (1993). There was nothing improper about Deputy Kellerhall's request to see Mendoza's registration or insurance pursuant to a valid stop for speeding, even after he was presented with a valid driver's license. See id. In response to the deputy's request, Mendoza responded that the papers were in the car. The lower court found that
 
 
 31
 In this case, Deputy Kellerhall was entitled to stop the speeding Dodge vehicle. Deputy Kellerhall was confronted with a situation where he was alone, and there were two occupants of this vehicle. One was outside and one was inside ... Whenever Deputy Kellerhall learned that the papers might be in the vehicle, he had to make a determination whether to allow Robert Mendoza to go back to the vehicle to get them (thereby joining forces with the other individual in the vehicle, making a potentially more dangerous situation) or to separate the two and, to some extent, divide and conquer. Deputy Kellerhall chose to do the latter, and, it is submitted, this was good law enforcement tactics, and did not violate any of Robert Mendoza's Fourth Amendment Rights.
 
 
 32
 J.A. at 77. There is ample support in the record for these conclusions. Thus, the lower court correctly concluded that it was appropriate for Deputy Kellerhall to approach the vehicle.
 
 
 33
 After approaching the vehicle the deputy received a conflicting story as to the defendant's destination and smelled the odor of raw marijuana. The lower court properly concluded that based on these articulable suspicions, the deputy could have searched the vehicle at that point without a warrant. See Johnson v. United States, 333 U.S. 10, 13 (1948); United States v. Crotinger, 928 F.2d 203, 205-206 (6th Cir.1991); United States v. Caves, 890 F.2d 87, 90 (8th Cir.1989). However, the deputy only searched the vehicle after receiving Mendoza's consent.
 
 
 34
 Mendoza argues that he was coerced, and signed the consent form only after being told that he could refuse to consent but that if he refused he would be detained until a narcotics sniffing dog arrived at the scene. Mendoza testified at the suppression hearing that even though the deputy told him that he could refuse to sign the form, he felt scared and threatened. J.A. at 155. He also testified that the deputy told him that if he did not consent his face would be shown on television.
 
 
 35
 The question of whether consent is voluntarily tendered or whether it is "the tainted product of unlawful duress or coercion 'is a question of fact to be determined from the totality of the circumstances.' " Taylor, 956 F.2d at 577 (6th Cir.1992) (quoting Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). "Proof of voluntary consent must be 'by clear and positive testimony' and the consent must be proven to have been 'unequivocal, specific, intelligently given, uncontaminated by any duress or coercion.' " Id., 956 F.2d at 577 (quoting United States v. Williams, 754 F.2d 672, 675 (6th Cir.1985)).
 
 
 36
 We find nothing in the record which reflects that Deputy Kellerhall threatened or attempted to intimidate the defendant. The deputy twice informed the defendant that he did not have to sign the consent form, but warned him that if he did not sign it a canine unit would be summoned. J.A. at 143-44. Whether the defendant consented to the search because he felt that the canine would have a better chance of discovering the marijuana than would the deputy is of no consequence. Mendoza also testified in the suppression hearing that the deputy told him that if he did not consent to the search his face would be shown on the national television show, "Cops." J.A. at 156. However, no such comment was recorded by the camera crew taping the incident and deputy Kellerhall denies having made the comment. J.A. at 151. The lower court found the deputy's testimony to be credible. "Findings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." Taylor, 956 F.2d at 576: see also United States v. Mendenhall, 446 U.S. 544, 557 (1980) (holding that if trial court's finding on a motion to suppress is sustained in the record, then appeals court is "mistaken for substituting for that finding its view of the evidence.") The lower court's findings are not clearly erroneous and are supported by the record.
 
 C.
 
 37
 Robert Mendoza's final claim is that the lower court abused its discretion in sentencing him as a career offender with a criminal history category of 6, based on his two prior convictions for drug charges. He does not attack the validity of the prior convictions, nor does he argue that the lower court miscalculated his career offender status or criminal history category. Rather, he claims that the court should have departed below the appropriate guideline sentence because of (1) the length of time between this guilty plea and his earlier convictions and, (2) his record of service in the military during the Vietnam war. This claim is also without merit. "[A] sentence which is within the Guidelines, and otherwise valid ... is not appealable on the grounds that the sentencing judge failed to depart from the Guidelines on account of certain factors which the defendant feels were not considered by the Guidelines and should reduce his sentence." United States v. Gregory, 932 F.2d 1167, 1105 (6th Cir.1991) (quoting United States v. Draper, 888 F.2d 1100 (6th Cir.1989)).
 
 IV.
 
 38
 For the foregoing reasons, we AFFIRM the dismissal without prejudice of the original indictment and the denial of Robert Mendoza's motion to dismiss. We also AFFIRM the sentencing of Robert Mendoza as a career offender with a criminal history category of 6.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Court Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [2]
 Robert Mendoza's Motion to Join Defendant's Motion to Dismiss was erroneously filed under the name Richard Mendoza. J.A. at 93