70 F.3d 116
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric LOVE, Court for the Northern Defendant-Appellant.
 No. 94-4222.
 United States Court of Appeals, Sixth Circuit.
 Nov. 13, 1995.
 
 Before: CONTIE, RYAN, and SUHRHEINRICH, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, Eric Love, appeals from his conviction and sentence entered after a jury found him guilty of aiding and abetting two persons to knowingly possess cocaine base with the intent to distribute in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841(a)(1). Love's primary argument is that the district court erred in denying Love's motion to suppress evidence, and that the court abused its discretion by dismissing an initial indictment without prejudice for a speedy trial violation, rather than with prejudice, pursuant to 18 U.S.C. Sec. 3162(a)(2). Love also argues that the district court committed several errors in sentencing the defendant. We AFFIRM the conviction and sentence.
 
 I.
 
 2
 In mid-December 1992, Special Agent Terry DeWald of the Bureau of Alcohol, Tobacco, and Firearms (BATF), using a concealed listening device, monitored several conversations between confidential informant Eric Smothers and Adolphus Mitchell. In these conversations, Mitchell offered to sell Smothers cocaine base, or "crack." On December 22, 1992, Smothers, again wearing a listening device, met with Mitchell to buy seven ounces of crack for $7000; unbeknownst to Mitchell, however, Smothers was carrying no money. Mitchell drove Smothers from one Cleveland neighborhood to another. On the way, Smothers asked Mitchell whom they were meeting, and Mitchell responded, "We're going to E's house, you know, E, Eric Love. He's got a cousin that's a big time dealer."
 
 
 3
 At around 3:30 p.m., Mitchell stopped the car outside the house located at 13507 Crossburn. Agent DeWald and several other BATF agents had followed Mitchell; the agents took surveillance positions around the house. For some time, Mitchell tried to persuade Smothers to show Mitchell the purchase money, but Smothers refused to show any money until Mitchell showed Smothers the crack and weighed it. Mitchell entered the house and, a short time later, Antwon Rogers left the house and drove away in another vehicle. Mitchell told the informant, Smothers, that Rogers had gone to obtain a scale. Mitchell asked Smothers to bring the money inside the house. Smothers, who of course had no money, claimed that his girlfriend was holding the cash and that he had to call her. Mitchell told the informant to make the call.
 
 
 4
 Smothers remained in the car as Mitchell walked back to the house. Smothers asked the agent, via the concealed microphone, whether Smothers should go into the house. DeWald sent a prearranged "yes" code to the informant's pager. Smothers entered the house, saw three women in the living room, and followed Mitchell into the kitchen. There, Smothers saw the defendant, Eric Love, with whom Smothers was casually acquainted. Love pointed to a telephone mounted on the kitchen wall. Smothers called DeWald's cellular telephone.
 
 
 5
 A few minutes later, the agents burst into the house and conducted a so-called "protective sweep." The agents handcuffed all the occupants in the house. Smothers was taken outside, where he told DeWald that Mitchell and Love were involved, but the women were not. DeWald returned to the kitchen and formally placed Mitchell and Love under arrest; the women were freed from the handcuffs. DeWald asked Doris Love, the defendant's mother and the owner of the house, for consent to search the house. Doris Love signed a written consent form.
 
 
 6
 The search of the home lasted 45 to 50 minutes. During the search, an agent discovered a bag of crack, later weighed at 139.8 grams. Antwon Rogers returned during the search, and agents found that he was carrying a scale with cocaine residue. When the search of the house was completed, DeWald searched Eric Love a second time (the first search was a cursory pat-down) and found a pager, a calculator, and an identification card with the name "Eric Bailey."
 
 
 7
 After arriving at the BATF field office, the defendant waived his Miranda rights and provided a written statement. In the statement, Love confessed that he arranged a crack deal between Mitchell and Rogers. He said that he, Rogers, and Mitchell decided to meet at Doris Love's house to consummate the deal. Rogers picked up Love at a commuter train stop and drove to Doris Love's house. The defendant saw that Rogers was carrying approximately five ounces of cocaine.
 
 
 8
 In January 1993, a federal grand jury returned an indictment against Mitchell, Love, and Rogers. Count One charged that the three defendants conspired to distribute and possess cocaine base with the intent to distribute, 21 U.S.C. Sec. 841(a)(1). Count Two asserted that the defendants "knowingly and intentionally possess[ed] with intent to distribute" 139.8 grams of cocaine base, purportedly in violation of 21 U.S.C. Secs. 841(a)(1), 846, and 18 U.S.C. Sec. 2. The defendant was arraigned on February 4, 1993.
 
 
 9
 On March 5, 1993, the defendant filed five pretrial motions, including motions to suppress the inculpatory statement and the evidence seized at the house, and a motion to sever. The motions to suppress were referred to a magistrate judge, who held a hearing on April 27-28, 1993. On June 23, 1993, the magistrate judge denied the motions to suppress. The magistrate judge first held that the defendant did not have the capacity to challenge the warrantless entry of the house because he had no legitimate expectation on privacy in his mother's house. Although Love previously lived in the house with his mother, he had moved out approximately six months before the search. Love was allowed in the house only when his mother was present. The evidence did not suggest that Love was an overnight guest at the time of the search. In light of the finding of no privacy expectation, the magistrate judge declined to decide whether exigent circumstances supported a warrantless entry. The magistrate judge also held Love's statement admissible because he was lawfully arrested upon probable cause.
 
 
 10
 On June 29, 1993, the defendant filed objections to the magistrate judge's report and recommendation. The government filed its response on July 21, 1993. Ninety-three days later, the district court adopted the report and recommendation in full. Meanwhile, the district court had been scheduling and rescheduling trial dates. The rescheduling was compelled by various reasons, not the least of which was the defendant's successful petition for a new attorney in January 1994. In March 1994, the district judge hearing the case took senior status, and the case was reassigned. The defendant moved for dismissal on speedy trial grounds, referring generally to both the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. Sec. 3161.
 
 
 11
 On April 11, 1994, the newly assigned district judge held a hearing on the motion and granted it. The district court did not explain why the Speedy Trial Act was violated, stating instead that "[i]t appears that both counsel join in asking this court to dismiss this action. The issue is whether it should be dismissed with prejudice or without prejudice." The government conceded a speedy trial violation. The district court then decided to dismiss without prejudice.
 
 
 12
 The reason the Court dismisses without prejudice is that the crime with which this Defendant was charged is a very serious crime; two, the facts of the circumstances leading to this motion to dismiss, the Court finds that no way are they related to the conduct of counsel for the Government or to the conduct of counsel for the Defendant. Re-prosecution, the Court believes, in no way would impede the administration of justice. It would further it.
 
 
 13
 On April 26, 1994, a federal grand jury returned another indictment against Love. Count One of the second indictment, the conspiracy count, was essentially the same as the initial indictment. Count Two charged Love with aiding and abetting Mitchell and Rogers in knowingly possessing cocaine base with intent to distribute. In June 1994, a jury found Love not guilty on Count One, but guilty on Count Two.
 
 
 14
 The district court sentenced the defendant under 21 U.S.C. Sec. 841(b)(1)(A), which provides for a mandatory minimum sentence of 20 years where a defendant commits a drug offense involving 50 grams or more of cocaine base and has a prior felony drug conviction. The district court found the mandatory minimum applicable because Love's written statement showed that the defendant was well aware that the Mitchell-Rogers purchase he had arranged involved 139.8 grams, or about 5 ounces, of cocaine base. Lastly, the district court refused to impose a sentence lower than the mandatory minimum because it lacked the authority to do so.
 
 II.
 A.
 
 15
 When reviewing the denial of a motion to suppress evidence, we consider the evidence in the light most favorable to the government. See United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992). We apply the clear error standard to findings of fact when reviewing the ruling of a district court on a motion to suppress, but review conclusions of law de novo. Id.
 
 B.
 
 16
 In order for a defendant to have the capacity to challenge a search on Fourth Amendment grounds, " 'the person who claims the protection of the Amendment [must have] a legitimate expectation of privacy in the invaded place.' " Minnesota v. Olson, 495 U.S. 91, 95 (1990) (quoting Rakas v. Illinois, 439 U.S. 128, 143 (1978)) (alteration supplied). Those subjective expectations of privacy that society recognizes as reasonable will be deemed legitimate. Id. at 95-96. In Olson, in order to arrest the defendant, police officers entered the home of the defendant's friend without a warrant. The defendant had been staying at the friend's house for several days before the search. The defendant contended that he had a legitimate expectation of privacy in the friend's house, and thus the warrantless entry was unconstitutional under Payton v. New York, 445 U.S. 573 (1980), which held that a suspect generally should not be arrested in his house without a warrant. The Court in Olson agreed, holding that "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." Olson, 495 U.S. at 96-97.
 
 
 17
 The Court reasoned that society recognizes that a traveler stays and sleeps in others' homes when on the road "precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." Id. at 99. The Court noted that "[w]e are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings." Id. Accordingly, the overnight guest in Olson had a legitimate expectation of privacy, and the warrantless entry was unconstitutional absent exigent circumstances or consent.
 
 
 18
 Prior to Olson, we decided United States v. Buckner, 717 F.2d 297 (6th Cir.1983). In Buckner, officers arrested the defendant while he was in his mother's apartment. The officers entered without a search warrant. We held that the "defendant did not have a legitimate expectation of privacy in his mother's apartment." Id. at 300. We declared: "The defendant did not live there and there are no facts other than his relationship to the occupant of the apartment which would show that he had standing to challenge the search of his mother's apartment." Id.
 
 
 19
 We conclude that the district court did not err by holding that the defendant did not have a legitimate expectation of privacy in his mother's house. First, the defendant has not shown that the district court committed clear error by finding that the defendant moved out six months before the search and that the defendant was not an overnight guest. Thus, Love was essentially a casual visitor. Unlike overnight guests, a person who "drops by" another's home does not typically seek a private shelter. To be sure, the defendant is the house owner's son, but that relationship does not, we think, establish an expectation of privacy, for Fourth Amendment purposes, beyond that of an unrelated, invited guest making a brief visit.
 
 
 20
 Accordingly, the district court properly rejected the defendant's challenge to the warrantless entry and arrest, and to the ensuing written statement. Lastly, the defendant's challenge to the subsequent search of the house fails, because Doris Love consented to the search.
 
 III.
 A.
 
 21
 We apply a "modified abuse of discretion standard" to review the district court's decision to dismiss with or without prejudice under the Speedy Trial Act. United States v. Kottmyer, 961 F.2d 569, 572 (6th Cir.1992). Because a federal statute expressly " 'declare[s] that a decision will be governed by consideration of particular factors,' we must ensure that the district court 'carefully consider[ed] those factors as applied to the particular case and ... carefully articulate[d] their effect.' " Id. (first alteration added) (quoting United States v. Taylor, 487 U.S. 326, 336 (1988)). The district court's balancing of the factors " 'shall not lightly be disturbed.' " Id. (quoting Taylor, 487 U.S. at 337).
 
 B.
 
 22
 Section 3161(c)(1) of the Speedy Trial Act requires that a defendant's trial commence within 70 days of the arraignment. 18 U.S.C. Sec. 3161(c)(1). Certain delays are not counted when computing the 70-day time period. Sec. 3161(h). Once the 70 nonexcludable days pass, the district court must dismiss the indictment upon the defendant's motion. Sec. 3162(a)(2). However, the dismissal may be with or without prejudice.
 
 
 23
 In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.
 
 
 24
 Sec. 3162(a)(2).
 
 
 25
 The seriousness of the offense is not measured by "a mechanical test based upon the Guidelines." United States v. Pierce, 17 F.3d 146, 149 (6th Cir.1994). This factor "simply demands that the gravity of the crime be carefully considered as a factor in deciding whether to dismiss without prejudice." Id. In Kottmyer, 961 F.2d at 572, we approved a district court's conclusion that conspiracy to distribute two kilograms of cocaine was a serious offense. As to the second factor, if the delays compelling dismissal did not result "from prosecutorial bad faith [ ] or from any attempt to take tactical advantage of a delay," then "the [district] court's conclusion that this second factor authorizes dismissal with or without prejudice is a matter within its discretion." Pierce, 17 F.3d at 149. Finally, in weighing the impact of reprosecution on the administration of the Speedy Trial Act and justice, the district court "consider[s] whether the delay has prejudiced the defendants and whether dismissal with prejudice is warranted to ensure future compliance with the Act." Kottmyer, 961 F.2d at 573.
 
 
 26
 We conclude that the district court did not abuse its discretion by entering dismissal without prejudice. The district court expressly placed its reasoning and consideration of the three statutory factors on the record. First, the court found that the charges were serious; second, the court properly weighed the government's blamelessness in producing the delays; and, finally, the court considered that the defendant failed to explain why the delay had prejudiced his defense or why the government--blameless here--would be deterred from wrongdoing by a dismissal with prejudice.
 
 IV.
 
 27
 Love assigns error to three aspects of his sentencing. First, the defendant argues that, for sentencing purposes, the district court should not have attributed to him the entire amount of the drug transaction, 139.8 grams. However, the defendant's own written statement shows that the defendant knew the amount of cocaine base involved in the drug transaction he helped to arrange. We conclude that the district court committed no error in holding Love responsible for the entire 139.8 grams.
 
 
 28
 Next, Love challenges the applicability of the 20-year mandatory minimum sentence in 21 U.S.C. Sec. 841(b)(1)(A), which is triggered when the defendant has a prior felony drug conviction and the current offense involves 50 grams or more of cocaine base. The defendant argues that, although an Ohio judgment of conviction reflects that he pleaded guilty to attempted felony drug trafficking, he actually did not so plead.
 
 
 29
 Section 851 authorizes a defendant to challenge the validity of a prior drug felony when used to enhance a drug offense sentence. 21 U.S.C. Sec. 851. Once the government files an information setting forth a prior drug felony for sentence enhancement, the district court must carry out certain duties. Sec. 851(b). When a defendant denies the information, Sec. 851(c) sets forth further procedural requirements, including written responses, a hearing, and burdens of proof. Sec. 851(c)(1), (2).
 
 
 30
 We cannot tell from the record before us whether the district court rigidly followed the procedures dictated by Sec. 851, but the defendant does not claim a failure to follow the procedures. We conclude that Love's prior Ohio conviction was properly used to trigger the 20-year mandatory minimum sentence under Sec. 841(b)(1)(A). The portions of the state court plea colloquy quoted by the parties show that the prosecutor and judge repeatedly referred to the proper statute and described the violation as a felony. The state court once referred to the offense as simple "possession," but the prosecutor quickly pointed out the mistake. The mandatory minimum sentence applies.
 
 
 31
 Finally, Love argues that his role as a "minimal participant," U.S.S.G. Sec. 3B1.2(a), or at worst a "minor participant," Sec. 3B1.2(b), in the crime should have reduced his offense level. But the defendant was sentenced pursuant to a statutory mandatory minimum, not a sentencing guidelines offense level. Aside from substantial assistance motions by the government, Sec. 3553(e), there exists no authority to impose a sentence below a statutory minimum. We conclude that the district court properly refused to sentence Love below the 20-year mandatory minimum sentence.
 
 V.
 
 32
 We AFFIRM the conviction and sentence.