**UNITED STATES of America**

v.

**Austin Fred LOWERY.**

No. 9:97–CR–23.

United States District Court,
E.D. Texas,
Lufkin Division.

June 30, 1998.

John Malcolm Bales, Asst. U.S. Atty., Lufkin, TX, for Government.

Wayne Dickey, Federal Public Defender, Tyler, TX, for Defendant.

### MEMORANDUM OPINION

COBB, District Judge.

Austin Fred Lowery was indicted by a grand jury in the Lufkin Division of the Eastern District of Texas of violation of 18 U.S.C. § 844(f)(1), on July 23, 1997, for:

That on or about the 5th day of July, 1997, in Crockett, Texas, which is in the Eastern District of Texas, Austin Fred Lowery, defendant herein, did knowingly and maliciously damage and attempt to damage, by means of fire, a building owned by the United States Postal Service, an agency of the United States, in violation of Title 18, United States Code, Section 844(f)(1).

Due to an unintentional mix-up, the "Speedy Trial Act," 18 U.S.C. § 3161, has been violated, and Lowery languishes in the Liberty (Texas) County Jail in the custody of the United States Marshal, of the Eastern District of Texas. *Sua sponte,* the court is required to dismiss the indictment. The only question for this court to decide is whether the dismissal is to be with prejudice or without prejudice.

A brief chronological outline of events is required:

July 9, 1997—A criminal complaint and arrest warrant were authorized by Judge John Hannah of the Eastern District of Texas.

July 23, 1997—Lowery was indicted. Coincidentally on the same date, he was ordered removed by the Western District of Texas which had processed Lowery after his arrest on the complaint.

Lowery made his first appearance with counsel in the Eastern District of Texas. At that time, the Government moved for a psychiatric examination. This motion was unopposed by Mr. Wayne Dickey, appointed counsel for Lowery.

August 4, 1997—Magistrate Judge Harry McKee signed an order which required Lowery to go to the Medical Center for Federal Prisoners, Springfield, Missouri, for a psychiatric assessment. Lowery was then transported to Springfield in due time.

December 8, 1997—Judge Thad Heartfield convened a competency hearing and found that Mr. Lowery was not competent to stand trial.

December 10, 1997—Judge Heartfield signed an order which committed Mr. Lowery to the custody of the Attorney General for a reasonable period of time, not to exceed four months, to see if Lowery could be restored to competency.

For some then unknown and unexplained reason, Judge Heartfield's order of December 10, 1997, for further custody of the Attorney General was never carried out. The Marshal's Service did not transport him to a mental hospital within ten days of December 10, 1997.

Although arrested on a complaint filed with Judge Hannah, and an arrest warrant signed by that judge, the indictment was

assigned by lot to Judge Heartfield. After the December 10, 1997, order signed by Judge Heartfield, for some then unknown reason the Marshal was not furnished with that order, and thus did not comply with it.

On May 1, 1998, a general reassignment of cases was ordered by reason of an impending vacancy on the Eastern District of Texas federal bench. Judge Heartfield transferred approximately forty-five cases to me, including thirteen criminal cases, of which this was one.

The official file apparently remained in Lufkin, although an incomplete duplicate file was received in this office earlier, together with the remaining 40 plus files when transferred to me.

Lufkin, Texas, has a courthouse, but has no resident judge. Judges Hannah and Heartfield shared the Lufkin docket after Judge Heartfield was officially appointed. At least two, and often three magistrate judges have heard trials by consent (all civil), supervised pre-trial preparation in a large number of civil cases, and pre-trial matters in most criminal cases.

In this case, Judge Heartfield on motion of the attorneys held a hearing, ordered an additional commitment of Lowery (not to exceed four months) to a United States Prison Hospital to determine if and when Lowery would become competent to proceed to trial, and the extent to which his condition could be improved by treatment and medication. That order, I have now determined, was entered on either December 10th or 11th, 1997. Copies of the order were forwarded by the United States District Clerk's office to Judge Heartfield, the lawyers for the government, and the defendant.

Apparently, none of those who received the December 10, 1997, order transmitted a copy to the United States Marshal's office. The deputy docket clerk placed a rubber stamp on the reverse of the last page of those persons to whom she sent copies. The courtroom deputy did not send a copy to the marshal, nor was that in the scope of the work assigned to her.

It is quite apparent to this court that the deputy docket clerk who sent copies to various persons did not fully understand that there was a requirement she forward a copy to the Marshal. The order committed Lowery to the "custody of the Attorney General of the United States," and not specifically to the United States Marshal for the Eastern District of Texas. The court finds this was inadvertent, due to lack of instruction by the United States District Clerk, or lack of understanding by the deputy docket clerk. It was not in any way attributable to any attempted unlawful or unfair efforts of the presiding judge, the office of the single full-time assistant United States Attorney stationed in Lufkin, nor the United States Marshal's office.

There is an analysis which this court must make in order to determine whether the dismissal is with or without prejudice.

In *United States v. Taylor*, 487 U.S. 326, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988), the Supreme Court quoted the statute:

> "If a defendant is not brought to trial within the time limited required by section 3161(c) as extended by 3161(h), the information or indictment shall be dismissed on motion of the defendant.... In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

As is plain from this language, courts are not free simply to exercise their equitable powers in fashioning an appropriate remedy, but in order to proceed under the Act, must consider at least the three specified factors.

.    .    .    .    .

The legislative history also confirms that, consistent with the language of the statute, Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation. Prior to the passage of the Act, the dismissal sanction generated substantial controversy in Congress, with proponents

of uniformly barring represecution arguing that without such a remedy the Act would lack any real force, and opponents expressing fear that criminals would unjustly escape prosecution. See generally A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, pp. 31–33 (Federal Judicial Center 1980); *United States v. Caparella*, 716 F.2d, at 978–979 (reviewing legislative history). Eventually, in order to obtain passage of the Act, a compromise was reached that incorporated, through amendments on the floor of the House of Representatives, the language that eventually became § 3152(a)(2). See 120 Cong. Rec. 41774–41775, 41778, 41793–41794 (1974). The thrust of the compromise was that the decision to dismiss with or without prejudice was left to the guided discretion of the district court, and that neither remedy was given priority.

.    .    .    .    .

The District Court's decision to dismiss with prejudice rested largely on its conclusion that the alternative would tacitly condone the Government's behavior, and that a stern response was appropriate in order to vindicate the guarantees of the Speedy Trial Act. We certainly encourage district courts to take seriously their responsibility to consider the "impact of represecution on the administration" of justice and of the Act, § 3162(a)(2). It is self-evident that dismissal with prejudice always sends a strong message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays ... Nonetheless, the Act does not require dismissal with prejudice for every violation. Dismissal without prejudice is not a toothless sanction; it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet these burdens, substantial delay well may make represecution, even if permitted, unlikely. If the greater deterrent effect of barring represecution could alone support a decision to dismiss with preju-

dice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring represecution.

A very similar situation is presented in *United States v. Kottmyer & Upton*, 961 F.2d 569 (6th Cir.1992). Both defendants, after conviction of drug offenses, appealed on the ground (among others) that their speedy trial rights had been violated and their indictments should be dismissed with prejudice. The court said:

> There is no dispute that 111 non-excludable days elapsed between the defendants' arraignment and the filing of their motion to dismiss the indictment. There is also no dispute that, under 18 U.S.C. § 3162(a)(2), the district court was required to dismiss the indictment. The only issue before us is whether the court erred by dismissing the indictment without prejudice.

The Act provides guidance to a district court faced with that decision:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a represecution on the administration of this chapter and on the administration of justice.
>
> 18 U.S.C. § 3162(a)(2).

On review, we apply a modified abuse of discretion standard to the district court's decision. Since "Congress has declared that a decision will be governed by consideration of particular factors," we must ensure that the district court "carefully consider[ed] those factors as applied to the particular case and ... clearly articulate[d] their effect." *United States v. Taylor*, 487 U.S. 326, 336, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988). If the district court properly considered the statutory factors, its "judgment of how opposing considerations balance should not lightly be disturbed." Id. 487 U.S. at 337, 108 S.Ct. at 2420.

.    .    .    .    .

The court next considered the reasons for the delay. The first 15 non-excludable days elapsed between the defendants' arraignment and the filing of Upton's notice of his intention to claim an insanity defense. Six days after receiving that notice, the government moved to have Upton examined. Counsel for the government erroneously drafted the proposed order to require an examination of Upton's competence to stand trial instead of his mental state at the time of the offense. One month later, the district court signed the order, requiring the United States Marshal to transport Upton to a psychiatric facility outside of the district. Upton was returned to the district on August 15, 1990. However, the court was not notified of Upton's return. The case lay dormant for three months. Finally, on its own motion, the court ordered a hearing on Upton's competency, which was held on November 19, 1990. Four days later, the defendants moved for dismissal.

The court ruled that the 96 days between Upton's return to the district and his competency hearing were non-excludable. In deciding to dismiss without prejudice, the court placed most of the blame for the delay on itself for failing to keep track of the case's progress. The court also blamed the government for failing to notify the court of Upton's return to the district, and blamed the defendants for failing to bring the delay to the court's attention.

2. The defendants correctly point out that they had no duty to bring the delay to the court's attention. However, the district court did not abuse its discretion by pointing out that the delay could have been avoided if the defendants had raised the matter earlier.

Thus, the record establishes that the court considered the reasons for the delay and articulated its findings. The court found that the delay was due mostly to carelessness on the part of itself and the government. While intentional dilatory conduct or a pattern of neglect by the government "would clearly have altered the balance," *Taylor*, 487 U.S. at 339, 108 S.Ct. at 2421, the defendants have not pointed to any evidence that would support such a finding.

.    .    .    .    .

Having articulated its findings on each of the three statutory factors, the court concluded that dismissal without prejudice was appropriate. That balancing "should not lightly be disturbed." *Taylor*, 487 U.S. at 337, 108 S.Ct. at 2420. The first factor, the seriousness of the offense, and the third factor, the lack of prejudice or a need to deter future neglect, weigh in favor of the government. The second factor, the government's neglect, weighs in favor of the defendants, but, without evidence of intentional delays or a pattern of such conduct, the court did not abuse its discretion by allowing reprosecution. Cf. *United States v. May*, 819 F.2d 531, 535 (5th Cir.1987) (affirming district court's refusal to dismiss with prejudice when other factors outweighed government's "indefensible" conduct). We therefore affirm the district court's decision to dismiss the indictment without prejudice.

The defendant's attorney is a federal public defender. He has never raised the issue of a speedy trial violation before any district judge or magistrate. Only after three district judges and one magistrate judge had entered various orders in this case was it discovered the full reasons for the violation in Lowery's case. As soon as it was tracked down, this court dismissed the indictment without prejudice. As a matter of fact, the speedy trial ran by some time in March or April 1998, prior to the case being transferred to this court. In setting criminal trials in Lufkin's upcoming docket, this court attempted to find the status of the various transferred cases. It was only on June 28, 1998, and on June 30, 1998, that the picture became somewhat clearer than when the cases and case files were transferred here.

The case could not be set for trial because the latest evaluation, though months old, had found the defendant mentally unable to stand trial.

In sum, the crime charged of attempting to damage by fire a building owned by the United States Postal Service is a serious crime. Second, the defendant was initially arrested four days later, and indicted eighteen days later. He has been found mentally

incompetent to stand trial. While the continued incarceration of the defendant weights against dismissal without prejudice, the dangerousness to the community and the range of penalty (five to twenty years imprisonment) should be taken into consideration, and has been by this court. The attorney for the defendant has not alleged prejudice for the investigation and preparation for Lowery's defense. Third, the government, through its United States Attorney's office in no way participated in the delay, nor indeed, even discovered it until inquiry was instituted by this court. Fourth, as far as anyone knows, defendant is still incompetent to stand trial. Last, an inadvertent error of a docket clerk was the cause of the delay.

Accordingly, the court *sua sponte* ORDERS that Cause No. 9:97–CR–23–1, United States of America v. Austin Fred Lowery, United States District Court for the Eastern District of Texas, Lufkin Division, DISMISSED without prejudice.