**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald COLLIS, Defendant–Appellant.**

No. 96–1127.

United States Court of Appeals,
Sixth Circuit.

Argued May 2, 1997.

Decided July 7, 1997.*

---

* This decision was originally issued as an "unpublished decision" filed on July 7, 1997. On Au- gust 20, 1997, the court designated the opinion as one recommended for full-text publication.

Patricia G. Blake, David Debold (briefed), Stephen L. Hiyama, Asst. U.S. Attorney (argued), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

David C. Tholen (argued), Stacey M. Studnicki (briefed), Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before: BROWN, KENNEDY, and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Ronald Collis was convicted of obstructing justice when he submitted a forged letter to a district court in support of leniency at a supervised release violation hearing. Collis appeals both his conviction and sentence, arguing that (1) the forged letter he submitted to the district court in support of leniency could not have formed the basis of an obstruction of justice charge because there was no evidence that the letter affected the court's sentencing determination; (2) the district court erred in finding that the attorney-client privilege did not apply to Collis's counsel's testimony regarding the forged letter; and (3) the district court erred in enhancing his sentence pursuant to U.S.S.G. § 2J1.2(b)(2). Because we find no error, we affirm.

I

This appeal stems from a parole violation after an earlier conviction. In 1990, Collis pled guilty to embezzling over $200,000 from a pension fund. As a result of this guilty plea, Collis was sentenced in federal court to a term of 12 months in a half-way house and three years of supervised release. The stay at the half-way house, however, did not stem Collis's predilection for embezzlement. About six months after being released, Collis began embezzling funds from Perfection Industries, where he was working at the time as the in-house accountant. This resulted in state criminal proceedings beginning against him and ultimately resulted in his pleading guilty in Detroit Recorder's Court to the lesser charge of attempted embezzlement.

Collis's probation officer, Charlene Minor, learned of the Recorder's Court case and also learned that Collis had left the state without seeking permission. As a result, she prepared a supervised release violation petition alleging that Collis had committed a new offense while on release and that he had left the district without permission. A revocation hearing was held and United States District Court Judge Zatkoff found that Collis had committed both of the alleged violations. He then invited Collis's counsel, Noel Lippman, to address the court before imposing sentence. In response, Lippman handed the judge three letters, all of which had been given to Lippman by Collis.

One of the letters was forged.[1] The letter appeared to be signed by Thomas P. Schwanitz, the principal owner of the firm where Collis had been working and was on the firm's letterhead. It is this letter that forms the basis for the obstruction of justice charge:

> I am writing to you on behalf of my employee, tax manager, Ronald Collis. He will be in your courtroom on May 12, 1994.

> Mr. Collis has been my employee since January 17, 1994, however, I have known Mr. Collis since 1974. As an employer,

---

1. The other two letters—one from his brother and one from his psychiatrist—were not forged and are not relevant to this appeal. The letter from Collis's brother attempted to take the blame for Collis's unpermitted trip out of Michigan, and the letter from the psychiatrist briefly recommended that Collis continue with psychiatric treatment.

Mr. Collis has been an ideal employee. He comes to work everyday [sic] with a smile on his face, producing to his ability, puts in long hours, and is very helpful to the staff. Most of all, he is very much client oriented, and always is putting the clients [sic] needs ahead of his or the firms [sic]. One would never know the problems he faces, and the vast amount of tragedy he is [sic] and has faced over the last five years.

On a personal level, our office was quite skeptical of employing him, however, the skepticism has been replaced. Mr. Collis is a man trying to rehabilitate himself through many facets. He has for the last year and a half been under the care of a psychologist. He meets on a weekly basis, and has also been under medication proscribed by the doctor, and takes the medication religiously.

In addition, Mr. Collis has been doing community service work without any recognition. He has devoted many evenings since January, 1994 to help the accounting students of Mount Clemens's High School for their national evaluations. He has also written, developed, and presented six half-hour cable programs for governmental access regarding Proposal A, how to avoid an IRS audit, What to do for an IRS audit, and the last two shows were on how to start a small business. These programs were broadcast over Metrovision, and Mr. Collis was asked and has produced similar shows for Clinton Township, and Shelby Township.

Mr. Collis last month wrote and was published in the California Medical Journal an article on "How to Help Avoid Employee Embezzlement and Fraud". He would not accept any remuneration for the article, as he felt it was part of his recovery.

Currently, the Michigan Association of CPA's has asked our firm to represent them at career day for Farmington High School, and Ferndale High School. We are currently awaiting your decision on Mr. Collis since he would be the employee we would have represent the MACPA because of his motivational speaking.

In his personal life, Mr. Collis is striving to improve himself. It is quite evident in the workplace. In his family life, he and his wife and [sic] trying to work out their various problems caused by Mr. Collis' mistake, and one can see great strides have been made. Financially, things have been very difficult for Mr. Collis, since he is the sole support of his wife and child, plus he is supporting a second family.

However, as you are aware, Mr. Collis agreed to make restitution to Perfection Industries, Inc. at the rate of $555.55 per month for the next 36 months. Mr. Collis has made all of his payments to date. Also, Chief Justice Robeson has delayed entering a guilty plea and may be placed [sic] Mr. Collis on probation in the future next to insure all restitution payments are being made.

I would very much like Mr. Collis to be given a second chance in this case. Judge Robeson too thought so in going along with the agreement made with the prosecutor.

If you find Mr. Collis is in violation of his supervised release, I would ask that you consider other alternatives than that of sending him to jail. These alternatives could include; extending Mr. Collis' supervised release until all payments have be [sic] met, community service, whereby the community would benefit, place Mr. Collis on a tether or home confinement so he could maintain income for his family and continue to make his required payments, or at very worst, send Mr. Collis to a halfway house, which there again he could maintain his income. In addition, by implementing any of the alternatives, Mr. Collis could attend his weekly meetings with his psychologist, Dr. Halberstadt to help him continue his rehabilitation.

I thank you for the time in reading this letter, and hope that you will take this into account at Mr. Collis' hearing.

Joint Appendix at 116–17.

After receiving the three letters, Judge Zatkoff sentenced Collis to eight months in prison. No additional supervised release or fine was imposed.

Sometime after the revocation sentence had become final, a member of Judge Zatkoff's staff learned that the Schwanitz letter

was a fabrication. The matter was then referred to the United States Attorney's Office and resulted in a two-count indictment, including the obstruction of justice charge.[2]

During trial, Lippman was called to testify. He testified that he received the Schwanitz letter from Collis before the hearing and that the letter had originally been furnished to him unsigned. After making some suggested changes to the letter, Lippman returned it to Collis. The signed version was subsequently presented to Lippman by Collis, along with a letter from Collis's brother and a letter from his psychiatrist.

Schwanitz also testified at trial. He testified that he did not draft, sign or even see the letter. He also testified that the letter contained several other falsehoods. For one, he testified that Collis was not going to represent the Michigan Association of CPAs at career day. He was also unaware that Collis's CPA license was inactive and he was unaware of the supervised release violation proceeding. In addition, it was shown at trial that Collis had never submitted the embezzlement article for publication.

Judge Zatkoff testified at trial as well. He indicated that the letters submitted by Collis are the type he normally receives and relies on and that he had read the forged letter submitted by Collis before he imposed sentence. Collis did not testify at trial and continues to maintain that he did not provide the Schwanitz letter to his attorney.

2. Collis was charged with endeavoring to obstruct the administration of justice, in violation of 18 U.S.C. § 1503, and with serving in a prohibited capacity in relation to an ERISA employee pension benefit plan, in violation of 29 U.S.C. § 1111. The district court ordered the counts severed and directed that the obstruction count be tried first. After Collis's conviction on the obstruction of justice count, the court granted the government's motion to dismiss the § 1111 count. In its motion, the government explained that the expected sentence on count one would fully serve the interests of justice because a conviction on both counts would not have increased Collis's sentencing guideline range.

3. Collis argues:

In the instant case, the Indictment does not establish any nexus between the submission of

## II

Collis argues first that the Schwanitz letter could not have formed the basis of an obstruction of justice charge because there was no evidence the letter affected the court's determination of guilt or the sentence imposed. While Collis's argument is styled as a challenge to the sufficiency of the indictment, it is more appropriately viewed as a challenge to the sufficiency of the evidence at trial.[3] Under either analysis, however, Collis's argument lacks merit.

### A. Sufficiency of the indictment

 Collis argues that the indictment did not set forth all of the elements of § 1503 or give notice of the charges he faced. We disagree. The charged offense fully tracks the relevant language of § 1503.

We review a challenge to the sufficiency of an indictment de novo. *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir.1992).

To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.

the allegedly bogus letter and an obstruction of the administration of justice. Judge Zatkoff's testimony at trial failed to establish that the letter had any *actual* effect on his sentencing decision, nor was any specific impact of the letter identified or articulated.

At most, the testimony of Judge Zatkoff suggested that the letter was of the "type" routinely relied on by a sentencing judge. The fact that the sentence imposed by Judge Zatkoff was not at the bottom of, or below, the applicable guideline range of 4 to 10 months further suggests the letter had no real impact.

Accordingly, the Indictment merely alleged a false statement, namely, the letter from Thomas Schwanitz, Defendant's employer. Therefore, Count One of the Indictment should have been dismissed for failure to state an offense under 18 U.S.C. § 1503.

Appellant's Brief at 12–13 (citation omitted).

*United States v. Martinez,* 981 F.2d 867, 872 (6th Cir.1992), *cert. denied,* 507 U.S. 1041, 113 S.Ct. 1874, 123 L.Ed.2d 493 (1993).

▮ In order to satisfy § 1503,[4] the government must prove that (1) there was a judicial proceeding; (2) the defendant had knowledge or notice of the pending proceeding; and (3) the defendant acted corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice. *United States v. Wood,* 6 F.3d 692, 695 (10th Cir.1993); *United States v. Williams,* 874 F.2d 968, 977 (5th Cir.1989). The third element, as explained by the Supreme Court, has an implicit "nexus" requirement:

> The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the Court's or grand jury's authority. Some courts have phrased this showing as a "nexus" requirement—that the act must have a relationship in time, causation or logic with the judicial proceedings. In other words, the endeavor must have the " 'natural and probable effect' " of interfering with the due administration of justice. This is not to say that the defendant's actions need be successful; an "endeavor" suffices. But as in *Pettibone* [*v. United States,* 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893) ], if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.

*United States v. Aguilar,* 515 U.S. 593, 599, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995) (citations omitted). It is this third element that Collis argues was not satisfied. He claims that Judge Zatkoff's testimony that he normally receives and relies on such letters

fails to establish that the letter had any actual effect on his sentencing decision. This argument is misplaced. The government need not show that the false statements actually obstructed justice. *United States v. Thomas,* 916 F.2d 647, 652 (11th Cir.1990). Collis's letter need only have "the natural and probable effect of impeding justice" to constitute a violation of § 1503. *Ibid.* The letter does so.

First, it paints the defendant in a very favorable light and indicates that despite his troubled past, his employer completely trusts him and holds him in high esteem. Second, the letter indicates that Collis will continue to be employed should he remain out of prison, enabling him to continue to pay restitution. Third, the letter indicates that Collis has taken responsibility for his past actions and has endeavored to stop others from following in his path.

This court's decision in *United States v. Essex,* 407 F.2d 214, 218 (6th Cir.1969), does not alter the analysis.[5] Unlike Essex, Collis was charged not only with submitting the false letter but also with endeavoring to obstruct and influence the sentencing process by seeking leniency using the letter. Moreover, *Essex* 's holding has been severely limited by this court in subsequent cases. *See United States v. Faudman,* 640 F.2d 20 (6th Cir.1981), and *United States v. Jeter,* 775 F.2d 670 (6th Cir.1985), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986).

Rather, we believe this case is more closely analogous to *United States v. Barber,* 881 F.2d 345 (7th Cir.1989), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990), where the Seventh Circuit upheld an obstruction of justice charge. In *Barber,* the defendant, a former attorney on probation at the time a former client was being sentenced, sent forged letters to the court urging a stiff sentence for his former client. The letters

---

**4.** Section 1503 provides in relevant part: "(a) Whoever corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)."

**5.** In *Essex,* the defendant had signed a false affidavit, which was then used by James Hoffa in a motion for a new trial. In the affidavit, Essex had falsely stated that she had had sex with

several jurors in Hoffa's criminal case while the jury was sequestered. *Id.* at 215. This court agreed with the district court that the gravamen of *Essex*'s offense was the "rendering of false testimony and nothing more," which was insufficient to state an obstruction of justice offense because "perjury alone lacks the element of obstruction." *Id.* at 218.

were written on the fraudulently acquired stationery of local businesses and bore forged signatures of the owners of those businesses. As a result, Barber's probation was revoked based on a violation of § 1503. In rejecting Barber's claim that he did not obstruct justice, the Seventh Circuit held that "[t]he false letters establish that the defendant, in mailing the letters to the sentencing judge, acted 'corruptly'"; that they constituted an endeavor to influence the former client's sentencing; and that they were the kind of letters that could properly be considered by the district court and that *could have* altered the sentence had Barber's conduct gone undiscovered. *Id.* at 351 (emphasis added).

### B. *Sufficiency of the evidence*

██ If Collis's argument is viewed as a challenge to the sufficiency of the evidence, it is also without merit. A challenge to the sufficiency of evidence requires that the verdict be sustained if "in the light most favorable to the Government ... 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Kottmyer,* 961 F.2d 569, 573 (6th Cir.1992) (citation omitted). Every reasonable inference from the evidence must be drawn in the government's favor. *United States v. Woods,* 877 F.2d 477, 479 (6th Cir.1989). The evidence, taken in the light most favorable to the government, clearly shows that the letter had the "natural and probable effect" of influencing the sentencing judge. The judge testified at trial that the letter Collis submitted is the type of letter that he receives and normally relies on in imposing sentence. And as stated above, it was not necessary that the government prove that the letter actually influenced the district court during the revocation hearing.

### III

Collis's next assignment of error involves the application of the attorney-client privilege. He argues first that the district court erred in finding that the attorney-client privilege had been waived when he made a statement to two government agents. He also argues that the crime/fraud exception to the

attorney-client privilege does not apply. We find no merit in either argument.

### A. *Facts relevant to the privilege issue*

On September 23, 1994, two government agents from the United States Department of Labor went to Collis to interview him. Collis was advised of his rights and waived them. The agents subsequently prepared a written statement of that interview:

> Collis examined a copy of a letter dated May 10, 1994 and acknowledged his lawyer, NOEL LIPPMAN submitted the letter to Judge ZATKOFF on May 12, 1994. COLLIS read the letter and stated that he didn't prepare the letter....
>
> According to COLLIS, he saw a draft of the letter sometime in April of 1994. He had originally drafted the letter and provided it to his attorney NOEL LIPPMAN. LIPPMAN asked him to prepare a letter from his employer and he also prepared one for his brother SHELDON COLLIS to sign. In both cases the letters were proofread by LIPPMAN and submitted back to THOMAS SCHWANITZ and SHELDON COLLIS....
>
> COLLIS took the SCHWANITZ modified draft letter and returned it to THOMAS SCHWANITZ. The modifications to the letter were made by NOEL LIPPMAN. COLLIS placed the modified letter in an envelope and gave it to SCHWANITZ. COLLIS never signed SCHWANITZ'S name to the letter and never saw the letter again until this writer showed it to him on this date. He assumed that SCHWANITZ made the requested modifications and returned the letter to LIPPMAN. COLLIS stated that he and LIPPMAN may have picked up the letter from Schwanitz on May 12, 1994 on the way to his court appearance.

Joint Appendix 41.

As a result of the information contained in this statement, the government filed a memorandum of law concerning the attorney-client privilege, indicating that it would call Lippman as a witness at Collis's trial. The government asserted that the attorney-client privilege was not a bar to Lippman's testimo-

ny because (1) Collis had waived the privilege by making the statement to the two government agents and (2) the crime/fraud exception to the privilege applied. On the first day of trial, the district court ruled that Collis had waived any attorney-client privilege by disclosing the pertinent communications to investigators. The court did not rule on the crime/fraud exception at that time.

At trial, Lippman testified that Collis had provided him with the three letters that were submitted to Judge Zatkoff. Lippman further testified that in all criminal cases he advises his clients "to get letters of recommendation from either employers [or] various people that speak well on their behalf" and that, because this was a criminal case, he had given Collis the same advice. He also testified that Collis initially provided him with an unsigned draft of the Schwanitz letter, to which he suggested some revisions, and that Collis then returned the final version to him with those changes. In addition, he testified that he never discussed the letter with Schwanitz.

After the government rested its case, the court reexamined the application of the crime/fraud exception and found that there was a prima facie case of a serious crime or fraud and that there was a clear relationship between the communications and the crime or fraud. Thus, the court determined that the evidence was admissible under the crime/fraud exception, even apart from the defendant's waiver of the attorney-client privilege.

### B. *Waiver of the privilege*

▮ Collis argues first that the privilege was not waived when he spoke with the two government agents because he did not reveal the substance of his attorney's advice to them. We disagree.[6]

▮ This court reviews a district court's decision regarding the waiver of the attorney-client privilege de novo. *See In re Grand Jury Proceedings October 12, 1995,* 78 F.3d 251 (6th Cir.1996). While the purpose of the attorney-client privilege is to encour-

age clients to communicate freely with their attorneys, the privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit. *Id.* at 254. A client can waive the privilege by voluntarily disclosing his attorney's advice to a third party. *Ibid.* The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same "subject matter" as the desired testimony. *Id.* at 255–56.

An examination of the testimony presented by Lippman shows that he testified to no more than those events revealed to the agents by Collis. The challenged testimony was that Lippman advised Collis to get a letter from Schwanitz, that Collis provided Lippman with a draft of the letter, that Lippman returned the draft to Collis with some suggested changes, and that Collis gave Lippman the final version of the letter on the day of the hearing. To the extent that the testimony revealed any confidential communications, Collis fully disclosed this information to the two government agents. He told the agents that Lippman had "asked him to prepare a letter from his employer" and that "[h]e had originally drafted the letter and provided it to [Lippman]." He also stated that he had drafted a letter for his brother and that "[i]n both cases the letters were proofread by" Lippman, who then proposed some changes.

▮ Collis's argument that the district court incorrectly determined the scope of the waiver is also without merit. The only possible statement by Lippman not clearly covered by Collis's statement to the agents is his reference to the manner in which the final signed version of the letter came into Lippman's possession. Testimony as to how Lippman received the letter, however, is not covered by the attorney-client privilege because there was no legal advice of any kind being sought in conjunction with the turning over of the letter. *See In re Grand Jury*

---

6. Collis argues on appeal that the statement given to the agents was not in a proper form. We do not address this issue because Collis did not raise it before the district court. *See Meador v.*

*Cabinet for Human Resources,* 902 F.2d 474, 477 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990).

*Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032 (2nd Cir.1984) ("the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications"). Moreover, even were the turning over of the letter covered by the privilege, Collis waived it when he stated that he assumed that Schwanitz had made the requested modifications and returned the revised letter to Lippman and that he and Lippman "may have picked up the letter from Schwanitz" on May 12, 1994, on the way to his court appearance. The attorney-client privilege does not forbid an attorney from exposing his client's lie where the client has revealed the lie to a third party.

### C. *Crime/fraud exception to the privilege*

■ Collis also argues that the communication does not fall within the crime/fraud exception to the attorney-client privilege because the government's allegations of fraud were not specific enough to allow disclosure of privileged communications under the exception. He also argues that the government failed to show that the communications at issue were in furtherance of a crime or fraud. These arguments lack merit as well.

■ A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud. This court has articulated a two-part test for applying the crime/fraud exception: "First, the government must make a prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the government must establish some relationship between the communication at issue and the prima facie violation." *In re Antitrust Grand Jury,* 805 F.2d 155, 164 (6th Cir.1986). To satisfy its prima facie showing, the evidence presented by the government must be such that "a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud." *Id.* at 166.

In this case, the government was able to make a prima facie showing that a serious crime or fraud occurred. The evidence undisputedly shows that the letter was forged, and there was certainly probable cause to believe that the defendant was responsible for the fraudulent letter. First, he was the only one with a motive to submit the letter. Second, he told the government agents that he drafted the original letter. Third, Schwanitz testified that he neither signed, endorsed, drafted nor saw the letter, and the only other person to handle the letter, Lippman, testified that he did not prepare it. The government also amply showed the relationship between the communication and the prima facie violation.

■ Collis's argument that the crime/fraud exception did not apply because "prior to the hearing, no one knew if [his] supervised release would be revoked, or if his supervision would be continued without any action by the court" misses the point of the crime/fraud exception. "The crime or fraud need not have occurred for the exception to be applicable; it need only have been the objective of the client's communication." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d at 1039. Thus, the exception would have applied even if Collis had never carried through with the submission of the fraudulent letter. Whether his supervised release would be revoked is simply not relevant to the inquiry.

### IV

Finally, Collis argues that the district court erred in enhancing his sentence, pursuant to U.S.S.G. § 2J1.2(b)(2), for "substantial interference with the administration of justice." He argues that the enhancement does not apply because the letter in question is not "false evidence." He also argues that "[t]he Judge's testimony at trial failed to establish that the letter had an actual effect on his sentencing decision, nor was any specific impact of the letter identified or articulated." Appellant's Brief at 26. Moreover, he argues that because the sentence imposed by Judge Zatkoff was not at the bottom of, or below, the applicable guideline range, the letter had no real impact. We disagree.

■ The district court's application of a guideline enhancement is a factual finding. *United States v. Williams,* 993 F.2d 1224, 1227 (6th Cir.1993). Thus, this court reviews

the sentencing court's factual findings for clear error and gives due deference to the court's application of the guidelines. *See* 18 U.S.C. § 3742(d); *see also United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

U.S.S.G. § 2J1.2(b)(2) provides that "[i]f the offense [of obstruction of justice] resulted in substantial interference with the administration of justice, increase by 3 levels." The commentary to § 2J1.2 provides that " '[s]ub-stantial interference with the administration' of justice includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2(b)(2), comment. (n. 1).

■ Collis's first argument, that the letter was not "false evidence," reads the commentary too narrowly. The court at sentencing receives information, which it treats as "evidence" for sentencing purposes, and that information need not adhere to the Federal Rules of Evidence to be considered by the court. Fed.R.Evid. 1101(d)(3). Although the letter was not submitted to determine whether Collis had violated his parole, it certainly was relevant to the length of the sentence to be imposed. A defendant may provide "false evidence," in the sense used in § 2J1.2(b)(2), even when all of the procedural requirements of the Federal Rules of Evidence do not apply.

■ Collis's other argument that, because Judge Zatkoff did not sentence him at or below the recommended range of 4 to 10 months, the government failed to establish that the letter had an impact on the sentence is also without merit. First, Judge Zatkoff was not bound by the recommended range of 4 to 10 months when he imposed sentence. He could have sentenced Collis to two years in prison. *See United States v. Sparks,* 19 F.3d 1099, 1101 (6th Cir.1994) (guidelines' policy statements in imposing sentence for a violation of supervised release must be considered but are not binding); 18 U.S.C. § 3583(e)(3) (permitting a revocation sen-tence of up to two years where the underlying offense was a class D felony). Second, Judge Zatkoff sentenced Collis below the term recommended in the PSR (10 months), which did not take into account the information contained in the false letter. Third, the letter was the most significant item presented to the court in the mitigation of sentence since the letter was a testimonial from Collis's employer that defendant was doing well, despite his past, and would be able to continue working at his current job. In fact, the importance of the letter is shown by Collis's counsel's own reliance on the letter in arguments to the court during sentencing.

### V

For the foregoing reasons, Collis's conviction and sentence are AFFIRMED.