OPINION
{¶ 1} Defendant-appellant Charles Mason Mooney appeals from his convictions and sentences in the Stark County Court of Common Pleas on two counts of aggravated vehicular assault in violation of R.C. 2903.08(A) (2), felonies of the third degree and one count of obstructing justice in violation of R.C. 2921.32(A) (5) (C) (3), a felony of the fifth degree. The plaintiff-appellee is the State of Ohio. The following facts give rise to this appeal.
 {¶ 2} On October 10, 2004, the driver of a 1991 Lincoln Towne Car lost control of his vehicle as it traveled north on Marietta Avenue near the intersection of Marietta and Lincoln Street East in Canton, Ohio. The vehicle failed to stop at the posted stop sign, then crossed Lincoln Street and crashed into the Ambassador Motel on the north side of Lincoln Street. (1T. at 95).
 {¶ 3} Dina Hall lived across the street from the motel. She looked out the window, and saw a car "sitting in the side of the Ambassador Motel." (Id. at 6). She also observed a black male run out from behind the motel; the man kept running through the parking lot of the nearby Family Dollar Store. Ms. Hall called 911 and ran outside. (Id. at 94, 99-100).
 {¶ 4} Ms. Hall has worked as a nurse, and searched for anyone who was injured and might need help. Her husband was already on the scene and said that someone was badly hurt. Ms. Hall came upon Delores Burris laying on the sidewalk two doors away from the door of her own room. Hall observed that Burris' left foot was missing, her right hand was badly cut, and she had an 8-inch gash on her head. Ms. Burris was not alert or coherent when Ms. Hall attempted to talk to her. (Id. at 94-96).
 {¶ 5} Ms. Hall looked into Ms. Burris' apartment through the window. She observed that a car had gone through the wall of the apartment, and cinder block was scattered everywhere. Ms. Hall described the car as a full-size, 4-door Lincoln. The entire vehicle had penetrated the motel room, except for the trunk. Ms. Hall did not see anyone inside the automobile.
 {¶ 6} Another victim, Marjorie Register, came from the other side of the motel with a large gash on her head. Ms. Hall kept talking to both victims. She attempted to bind Burris' leg and wrapped a shirt around the gash on Ms. Register's head. An emergency squad arrived on the scene and took over the care of both victims, who were transported to a hospital. (Id. at 97-98).
 {¶ 7} The investigation was assigned to Trooper Rick Wells of the Ohio State Highway Patrol, Office of Investigative Services. Trooper Wells began his investigation by photographing the scene of the crash. The Ambassador Motel is located at the northeast corner of the intersection of Marietta and State Route 172 [Lincoln Street]; Marietta "dead-ends" into S.R. 172. Marietta before the intersection is a "fairly rural, desolate" area, bisected by railroad tracks which are 3/4 of a mile from the intersection. Trooper Wells noted that the area is conducive to drag racing because of its isolation, and drag racing has been known to occur there. (2T. at 110-113).
 {¶ 8} Trooper Wells was not brought into the investigation until two days after the crash, so his photos do not show the car stuck in the wall of the motel. They did show, however, skid marks leading up to the motel, and the interior of victim Marjorie Burris' room, which was penetrated by the vehicle. The victim was sitting in a recliner when the crash occurred, and the vehicle forced the chair through a doorway, initially trapping her and avulsing her leg. The force of the impact ejected Ms. Burris from the room, and pieces of her hair and scalp were found embedded in the door jam. (Id. at 114-117).
 {¶ 9} Additional skid marks were located in the intersection, partially left of center. Trooper Wells theorized that the Lincoln hit a "hump" at the intersection and became airborne over S.R. 172; the vehicle came back to the ground in the driveway of the motel, but by then the driver had lost control. This theory is based upon the fact that skid marks continued up to the edge of S.R. 172, disappeared, and appeared again on the other side of S.R. 172. The width of S.R. 172 at that point is 24 feet. (Id. at 1151-19).
 {¶ 10} Trooper Wells suspected almost immediately that the crash was the result of a drag racing situation because of the evidence of excessive speed, which was established by the length of the skid marks. (Id. at 119-120).
 {¶ 11} Trooper Wells obtained a search warrant for the Lincoln automobile. He testified that items of evidentiary value were recovered; D.N.A. and hair analysis established that there were male occupants and a female occupant in the vehicle. The registered owner of the vehicle is Barbara Harris. Based upon the yield of the search warrant and the Barbara Harris connection, Trooper Wells developed three suspects as the driver of the Lincoln: Anthony Fitts, Antonio King, and Alfred Harris. Barbara Harris, the owner of the car, had filed a stolen car report moments after the crash, and supplied the names of potential suspects. (2T. at 120-121; 134).
 {¶ 12} In late December 2004, Trooper Wells was approached by a detective with the Canton City Police Department. The detective told Trooper Wells that appellant Charles Mason Mooney had information about the crash and wanted to come forward. Trooper Wells arranged to meet with appellant on December 20, 2004, while he was incarcerated at the Stark County Jail. (Id. at 122-124; 135-137).
 {¶ 13} Appellant revealed that on October 10, 2004, he participated in a drag race. Appellant drove a maroon Lexus, and the unidentified other driver drove a Lincoln. Appellant met the unidentified driver at a Fuel Mart gas station on State Route 43 and wanted to drag race. The Lincoln driver had an unidentified female with him in his car, so he dropped her off first at 1605 Sherrick Road and came back to race appellant. Appellant lives at 1609 Sherrick Avenue, two doors down from where the female was dropped off by the unidentified driver. Appellant's house is 2.3 miles from the intersection of S.R. 172 and Marietta. (Id. at 124-126; 128).
 {¶ 14} Appellant described the location of the race as over Marietta Avenue, north of the railroad tracks. The cars were positioned with the Lincoln left of center and appellant on the right-hand side of the road. Both cars took off at an accelerated speed, which was consistent with the skid marks Trooper Wells had observed at the scene. (Id. at 125-127).
 {¶ 15} Appellant claimed that he immediately pulled well ahead of the Lincoln and then slowed down. The Lincoln, though, stayed left of center and flew past appellant at a high rate of speed. Appellant described a whining noise as the car passed him, which he attributed to the Lincoln's power steering. Appellant watched as the Lincoln went off the left side of the roadway, came back onto the roadway, slammed on the brakes, skidded across S.R. 172 and struck the motel. Trooper Wells testified that appellant's account was consistent with the physical evidence.
 {¶ 16} Trooper Wells questioned appellant about the identity of the driver of the Lincoln. Appellant first said that it was not Fitts, King, or Alfred Harris. Then appellant added that he wanted a "deal" before he would give Trooper Wells any further information. Trooper Wells reiterated that he could not make any promises; all he could do was take appellant's information to the prosecutor. Appellant refused to answer any additional questions.
 {¶ 17} Ultimately, appellant and Fitts were both charged with aggravated vehicular assault, and appellant was charged with obstructing justice for refusing to provide additional information. Fitts and appellant were scheduled for trial on the same day, but the state dismissed the charges against Fitts before the jury was called. (1T. at 4).
 {¶ 18} Appellant testified in his own defense at trial, and his story changed significantly. He no longer claimed to be a participant in the drag race, but merely an observer.
 {¶ 19} Appellant testified concerning the details of his criminal history, which includes convictions for receiving stolen property, drug possession, dog fighting, and domestic violence. Appellant testified at trial that he was presently in prison for 5 years on another offense. Appellant testified that life in prison was "rough" and he did not want to spend any more time there. He even claimed that he attempted suicide to reduce his time in prison. (2T. at 153-154).
 {¶ 20} Appellant claimed that he decided to try to work with the police in order to get his prison time reduced. He told Sergeant Dittmore of the Canton Police Department that he had information regarding the crash on Marietta, and Sergeant Dittmore contacted Trooper Wells. Appellant claimed that when Trooper Wells visited him in the Stark County Jail, appellant immediately began asking him about what kind of "deal" he could get. (Id. at 157-58).
 {¶ 21} At trial, appellant claimed that he learned what he knew about the crash "from people involved. . . . and what [his] neighborhood is like." (Id. at 160). Appellant claimed that he and a neighbor "followed the sirens to the scene" after the crash occurred, and someone on the scene told them that someone had died. (Id. at 161). Appellant emphasized that he was not personally involved in the crash at all and that he lied to the trooper to try to get his time in prison reduced. (Id. at 158-160).
 {¶ 22} Regarding his refusal to identify the driver of the Lincoln, appellant described his conversation with Trooper Wells:
 {¶ 23} "[Appellant]: I asked him — he asked me what was the names of people. He started naming people and I am like I don't know. I'm like, What can you do for me with the Prosecutor? And he said, I can't guarantee you anything. He's like tell me some names on this first and I'm like I don't know.
 {¶ 24} "[Defense Counsel]: How did you obtain knowledge as to what happened during that accident?
 {¶ 25} "[Appellant]: Basically from people involved and like where, where my neighborhood is like. It was all in the neighborhood about what happened.
 {¶ 26} "I had went after the crash happened that night. Me and a neighbor went to the crash site and seen what happened, and I asked — there was a lady out there. I asked what happened that I had knew, and she told me, she said somebody was dead or something * * *." (2T. at 159-160).
 {¶ 27} On cross-examination, appellant further claimed that he took his neighbor, "Tony," to the crash scene "[b]ecause something about his mom's car was gone." (Id. at 162). He insisted that he found the crash site because he listened for the sound of emergency vehicles, and that he personally had no involvement in the crash. (Id.).
 {¶ 28} At the conclusion of the State's case, appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) on the two counts of aggravated vehicular assault. The motions were overruled. (2T. at 147-150). Although appellant did not specifically move for a judgment of acquittal on the count of obstruction of justice, the trial court weighed whether sufficient evidence of the offense had been presented, and also overruled a "motion" for acquittal on that count. (Id. at 150-151).
 {¶ 29} Appellant was found guilty as charged. The trial court sentenced him to an aggregate prison term of 4 years. This term was imposed consecutive to a term of five years that appellant was already serving on an unrelated case.
 {¶ 30} Appellant timely appeals from his convictions and sentences raising the following three assignments of error for our consideration:
 {¶ 31} "I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BECAUSE COUNSEL FAILED TO MOVE FOR ACQUITTAL ON THE CHARGE OF OBSTRUCTING JUSTICE. (Tr. at 150).
 {¶ 32} "II. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST APPELLANT ON THE CHARGE OF OBSTRUCTING JUSTICE BECAUSE THE JURY'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. (Tr., passim).
 {¶ 33} "III. THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S DETERMINATION THAT APPELLANT'S SENTENCES ON THE COUNTS OF AGGRAVATED VEHICULAR ASSAULT WERE REQUIRED TO BE SERVED CONSECUTIVE TO UNRELATED CHARGES. (Tr. At 223)."
 I. {¶ 34} In his first assignment of error, appellant argues that he was denied effective assistance of trial counsel under the standard set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and State v. Bradley
(1989), 42 Ohio St.3d 136. We disagree.
 {¶ 35} Appellant's claim of ineffective assistance of trial counsel simply requires that he demonstrate two things: deficient performance by trial counsel, and prejudice from trial counsel's deficient performance. Strickland, supra at 687; Hodge v.Hurley (6th Cir 2005), 426 F.3d 368, 375-76. To satisfy the performance prong, appellant must demonstrate that the representation he received "fell below an objective standard of reasonableness." Strickland at 688. Although an attorney is "strongly presumed to have rendered adequate assistance," the performance prong is satisfied if the representation at issue falls "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 36} To satisfy the prejudice prong, appellant had to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As appellant challenged the conviction itself, this required him to demonstrate "a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695.
 {¶ 37} The area in which appellant alleges that his trial counsel was ineffective was in counsel's failure to move for a Crim. R. 29 motion for acquittal at the conclusion of the State's case and at the conclusion of his case.
 {¶ 38} "The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury". Dayton v.Rogers (1979), 60 Ohio St.2d 162, 163, 398 N.E.2d 781, overruled on other grounds, State v. Lassaro (1996), 76 Ohio St.3d 261,266, 667 N.E.2d 384.
 {¶ 39} In the case at bar, appellant's trial counsel expressly moved for a judgment of acquittal on the two counts of aggravated vehicular assault at the conclusion of the State's case. (2T. at 147). The trial court overruled this motion. (Id. at 150). The trial court went on to consider a Crim. R. 29 motion with respect to the obstructing justice charge as follows: "[i]n regards [sic] to the obstructing justice, the question was asked has it hindered your ability to determine who the driver of the vehicle was, and the answer by him is in some regards, and then later on in recross-examination the question is asked. When you said it's hindering your investigation isn't it correct you believe my client is being a little less than truthful with you . . . I'll find that at least sufficient for a prima facie case for obstructing justice so I'll overrule that . . ." (Id. at 150-51). Counsel renewed his motions at the conclusion of his case. (Id. at 167).
 {¶ 40} Accordingly, any failure of trial counsel to expressly request a Crim. R. 29 motion for judgment of acquittal on the charge of obstructing justice was harmless beyond a reasonable doubt because the trial court did in fact enter a ruling on a Crim R. 29 motion concerning the obstructing justice charge. Accordingly prejudicial effect upon appellant was not demonstrated. As the trial court did rule upon a motion for judgment of acquittal with respect to the charge of obstructing justice at trial, counsel cannot be found ineffective for failing to expressly make the motion.
 {¶ 41} Appellant's first assignment of error is overruled.
 II. {¶ 42} In his second assignment of error, appellant maintains that his conviction for obstructing justice is against the weight and sufficiency of the evidence. We agree that insufficient evidence was presented to support appellant's conviction for obstructing justice.
 {¶ 43} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight.
 {¶ 44} Sufficiency of the evidence is a question of law for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury. A claim that evidence is insufficient to support a conviction as a matter of due process depends on "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 443 U.S.307, 319, 99 S.Ct. 2781, 2789. (Emphasis in original).
 {¶ 45} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St. 3d 387, citations omitted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 46} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller
(2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 47} Appellant challenges only his conviction for obstructing justice. Appellant was charged with violating R.C.2921.32(A) (5), which provides, in relevant part: "[n]o person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for [sic.] crime or to assist another to benefit from the commission of a crime . . . shall do any of the following:
 {¶ 48} "* * *
 {¶ 49} "(5) Communicate false information to any person. . . ."
 {¶ 50} In State v. Hall, 5th Dist. No. 05CA35,2006-Ohio-2160, this Court observed: "[i]n Ohio, the crime of obstructing justice cannot be committed without the commission of an underlying crime by another. State v. Bronaugh (1980),69 Ohio App.2d 24, 25, 429 N.E.2d 1084. Obstructing justice involves commission of an underlying crime by another, which must be proven by means of evidence going beyond the mere statement or allegation that a crime was committed. State v. Logan (1991),77 Ohio App.3d 333, 336, 602 N.E.2d 308.
 {¶ 51} "Nonetheless, it is not required that the crime by another result in a conviction of that other in order to satisfy the requirements of R.C. 2921.32. State v. Fisher, Richland App. No. 04-CA-78, 2005-Ohio-1615, ¶ 15, citing State v. Abdou
(Oct. 23, 1997), Franklin App. No. 97APA01-73. The State is required only to present evidence proving beyond a reasonable doubt that the other person committed a crime. Id. See, also,State v. Kolvek, Summit App. No. 21752, 2004-Ohio-3706". Id. at ¶ 16-17.
 {¶ 52} In the case at bar, the evidence establishes that the crime of aggravated vehicular assault was committed. It is undisputed that an automobile slammed into the Ambassador Motel severely injuring two of the motels occupants. The driver of that automobile fled the scene. The police developed three suspects as the driver of that automobile: Anthony Fitts, Antonio King, and Alfred Harris. (1T. at 121-22). Prior to the start of appellant's trial the State dismissed the aggravated vehicular assault charges against Anthony Fitts. (1T. at 4-6). The record contains no evidence that Mr. Harris or Mr. King were ever charged in connection with the crash.
 {¶ 53} To prove the elements of obstructing justice the state had to prove the following at trial: 1). appellant 2). with purpose or intent to hinder the investigation or to assist the perpetrator to benefit from the commission of a crime; 2). made a false statement. The statute does not require that the actions of the individual actually succeed in hindering the discovery, apprehension, prosecution, conviction, or punishment of another.
 {¶ 54} In this case, we conclude that the evidence was insufficient to demonstrate the elements of obstructing justice. First, the state has not identified, any statement made by appellant which was in fact false. Although the investigating officer had developed "suspects" it was not established at trial that any of the three individuals whom are suspected of driving the vehicle which struck the motel were in fact the driver of the vehicle at the time of the crash. Also, the state failed to establish below that appellant's purpose was to hinder the investigation or assist the driver. Rather, appellant's undisputed purpose in speaking with the police about the incident was to obtain a "deal" concerning his unrelated criminal case. No evidence was presented that appellant was purposely attempting to throw the investigation off course, or that appellant was attempting to assist the actual driver of the automobile to escape punishment. Although the trooper testified that his ability to determine who was driving the automobile was somewhat hindered as the result of appellant's denial that is not relevant. R.C. 2921.32 does not require evidence that the false statements actually hindered the discovery, apprehension, prosecution, conviction, or punishment of another for a crime or assisted another to benefit from the commission of a crime. Cf.United States v. Collis (6th Cir 1997), 128 F.3d 313. Rather the focus is upon the falsity of the statements and the individual's purpose in making the statements. The statute simply does not provide for conviction as a result of the accused's failure or refusal to cooperate with the investigating authorities. Thus, appellant's refusal to give the officer the name of the driver of the automobile which struck the motel after providing the officer with details concerning the crime was insufficient to support a finding of obstructing justice. As a result, we sustain the second assignment of error. On the authority contained in Section3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, the conviction and sentence on Count Three, obstructing justice are vacated.
 III. {¶ 55} In his third assignment of error, appellant argues that the trial court's imposition of consecutive sentences is contrary to R.C. 2929.11 and R.C. 2953.08(G) (2) (b). Appellant does not argue that the trial court's imposition of consecutive sentences is unconstitutional pursuant to United States v.Booker (2005),543 U.S. 220, 125 S.Ct. 738, Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, and State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
 {¶ 56} The appellant failed to make this objection before the trial court in a timely manner. Such an objection should first be raised before the trial court in order to provide the trial court the opportunity to correct or avoid the alleged error. State v.McKee (2001), 91 Ohio St.3d 292; State v. Williams (1977),51 Ohio St.3d 112. Absent plain error, the issue is waived. Statev. Carter (2000), 89 Ohio St.3d 593; State v. Moreland (1990),50 Ohio St.3d 58. No plain error exists in the matter now before us.
 {¶ 57} At the outset we note, there is no constitutional right to an appellate review of a criminal sentence. Moffitt v.Ross (1974), 417 U.S. 600, 610-11, 94 S.Ct. 2437, 2444; McKanev. Durston (1894), 152 U.S. 684, 687, 14 S. Ct. 913, 917; Statev. Smith (1997), 80 Ohio St.3d 89, 1997-Ohio-355,684 N.E.2d 668.
 {¶ 58} Under Ohio law, judicial fact-finding is no longer required before a court imposes consecutive or maximum prison terms. See State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856; State v. Mathis, 109 Ohio St.3d 54,846 N.E.2d 1, 2006-Ohio-855. Instead, the trial court is vested with discretion to impose a prison term within the statutory range. See Mathis, at ¶ 36. In exercising its discretion, the trial court must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case itself." Id. at ¶ 37. Thus, post-Foster, "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. State v. Rutter, 5th Dist. No. 2006-CA-0025, 2006-Ohio-4061; State v. Delong, 4th Dist. No. 05CA815, 2006-Ohio-2753 at ¶ 7-8. Therefore, post-Foster,
trial courts are still required to consider the general guidance factors in their sentencing decisions.
 {¶ 59} There is no requirement in R.C. 2929.12 that the trial court state on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discuss them. State v. Polick (1995), 101 Ohio App.3d 428, 431; Statev. Gant, Mahoning App. No. 04 MA 252, 2006-Ohio-1469, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing State v. Cyrus (1992), 63 Ohio St.3d 164,166; State v. Hughes, Wood App. No. WD-05-024, 2005-Ohio-6405, at ¶ 10 (trial court was not required to address each R.C.2929.12 factor individually and make a finding as to whether it was applicable in this case), State v. Woods, 5th Dist. No. 05 CA 46, 2006-Ohio-1342 at ¶ 19 (". . . R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors"). (Citations omitted).
 {¶ 60} However, Foster did modify an appellate court's standard of review concerning sentencing. Pre-Foster, an appellate court could increase, reduce, modify or vacate and remand a sentence if it found, by clear and convincing evidence, that the record did not support the trial court's findings of fact or that the sentence was otherwise contrary to law. R.C.2953.08(G) (2). The Foster Court's removal of R.C.2953.08(G)(2) from the statutory sentencing scheme eliminated the clear and convincing standard and left a void concerning the applicable standard of review in sentencing matters. State v.Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544 at ¶ 11.
 {¶ 61} Before passage of Am. Sub. S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996 ("S.B. 2"), Ohio had a predominantly indeterminate felony-sentencing structure in which a sentence was expressed in the form of a minimum and maximum prison term with the release decision in the hands of a parole board. Foster supra 109 Ohio St.3d at 12, 845 N.E.2d at 484,2006-Ohio-856 at ¶ 34. Under that structure the Ohio Supreme Court noted "[t]his court has held that: `A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12.' State v. Adams (1988),37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus; accord State v. O'Dell (1989), 45 Ohio St.3d 140, 147,543 N.E.2d 1220, 1227. Nothing in the statute or the decisions of this court imposes any duty on the trial court to set forth its reasoning. The burden is on the defendant to come forward with evidence to rebut the presumption that the trial court considered the sentencing criteria." State v. Cyrus (1992),63 Ohio St.3d 164, 166, 586 N.E.2d 94, 95-96.
 {¶ 62} R.C. 2929.41 gives the trial court discretion to specify that a sentence shall be served consecutively to another sentence. R.C. 2929.41(1); State v. White (1985),18 Ohio St.3d 340, 342; State v. Elam (1994), 68 Ohio St.3d 585, 586.
 {¶ 63} Prior to the passage of S.B. 2 it was well settled that the decision whether a criminal defendant is to serve the sentences for all his crimes consecutively or concurrently is a matter committed to the sound discretion of the trial court.State v. Johnson (1988), 40 Ohio St.3d 130, 133-134,532 N.E.2d 1295, certiorari denied (1989), 489 U.S. 1098, 109 S.Ct. 1574,103 L.Ed.2d 940; State v. White (1985), 18 Ohio St.3d 340, 342,481 N.E.2d 596; State v. Moss (1982), 69 Ohio St.2d 515, 518,433 N.E.2d 181, certiorari denied (1983), 459 U.S. 1200,103 S.Ct. 1183, 75 L.Ed.2d 430. Therefore, we conclude that post-Foster, this Court reviews the imposition of consecutive sentences under an abuse of discretion standard. Furthermore, when applying the abuse of discretion standard, an appellate court may not generally substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 64} Where the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation. Where the record adequately justifies the sentence imposed, the court need not recite its reasons. State v. Middleton (Jan. 15, 1987), 8th
Dist. No. 51545. In other words, an appellate court may review the record to determine whether the trial court failed to consider the appropriate sentencing factors.
 {¶ 65} The term "abuse of discretion" however has been applied in a somewhat rote manner by the courts without analysis of the true purpose of the appellate court's role in the review of a trial court's discretionary powers. An excellent analysis of the misconception surrounding the concept of "abuse of discretion" was set forth by the Arizona Supreme Court sitting en banc: "[t]he phrase `within the discretion of the trial court' is often used but the reason for that phrase being applied to certain issues is seldom examined. One of the primary reasons an issue is considered discretionary is that its resolution is based on factors which vary from case to case and which involve the balance of conflicting facts and equitable considerations. Walshv. Centeio, 692 F.2d 1239, 1242 (9th Cir. 1982). Thus, the phrase `within the discretion of the trial court' does not mean that the court is free to reach any conclusion it wishes. It does mean that where there are opposing equitable or factual considerations, we will not substitute our judgment for that of the trial court". State v. Chapple (1983), 135 Ariz. 281,296-97, 660 P.2d 1208, 1223-24. However, the Court explained, "[t]he term `abuse of discretion' is unfortunate. In ordinary language, `abuse' implies some form of corrupt practice, deceit or impropriety. Webster's Third New International Dictionary (1976). In this sense, the application of the word to the act of a trial judge who ruled in accordance with all the decided cases on the issue is inappropriate. However, in the legal context, the word `abuse' in the phrase `abuse of discretion' has been given a broader meaning. In the few cases that have attempted an analysis, the ordinary meaning of the word has been considered inappropriate and the phrase as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice. State ex rel. Fletcher v. District Court of JeffersonCounty, 213 Iowa 822, 831, 238 N.W. 290, 294 (1931). Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence `is an abuse.'Kinnear v. Dennis, 97 Okl. 206, 207, 223 P. 383, 384 (1924).
 {¶ 66} "The law would be better served if we were to apply a different term, but since most appellate judges suffer from misocainea, we will no doubt continue to use the phrase `abuse of discretion.' Therefore, we should keep some operative principles in mind. Something is discretionary because it is based on an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the trial judge, who has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and who can better assess the impact of what occurs before him. Walsh v. Centeio, supra.
Where a decision is made on that basis, it is truly discretionary and we will not substitute our judgment for that of the trial judge; we will not second-guess. Where, however, the facts or inferences from them are not in dispute and where there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic. Then it is our final responsibility to determine law and policy and it becomes our duty to `look over the shoulder' of the trial judge and, if appropriate, substitute our judgment for his or hers. This process is sometimes, unfortunately, described as a determination that the trial judge has `abused his discretion . . .'" Id. at n. 8; State v. Garza (1998),192 Ariz. 171, 175-76, 962 P.2d 898, 902.
 {¶ 67} Accordingly, appellate courts can find an "abuse of discretion" where the record establishes that a trial judge refused or failed to consider statutory sentencing factors.Cincinnati v. Clardy (1978), 57 Ohio App.2d 153,385 N.E.2d 1342. An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant. Woosley v. United States (1973), 478 F.2d 139, 147. The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. Woosley,
supra at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's can reverse the sentence.Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court "abused its discretion" in the imposition of sentence in a particular case.
 {¶ 68} In the case at bar, there is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor.
 {¶ 69} In the case at bar, the sentencing procedure which led to the imposition of appellant's sentence satisfied the due process protections of the Ohio and United States Constitutions.
 {¶ 70} Prior to imposing sentence, the trial judge indicated that he would allow counsel, appellant, and any family or friends present in the courtroom to make a statement on appellant's behalf. (2T. at 210-11). The court stated that it had "considered the facts in this particular case [and] the defendant's record" (Id. at 213). The court heard from the State's attorney concerning the severity of the victims' injuries, and their struggle to recover from them. (Id. at 213). The court considered that appellant is serving a five-year sentence for two felony convictions unrelated to the case at bar. (Id. at 214). The court further considered that appellant has previous convictions for crimes of violence. (Id. at 216). The court noted that appellant has failed to respond favorable to community control sanctions in the past. (Id. at 216-17). The court considered that appellant was not driving the automobile that struck the motel; however, his conduct in engaging in a drag race with that vehicle contributed the crash. (Id. at 218-19). The court noted that consecutive sentences were being imposed so that each victim's injuries could be punished separately from the other. (Id. at 221). The trial court found that consecutive sentences are necessary to protect the public from future crimes and to punish the appellant. (Id.). The court did not impose the maximum term of five years for either of the two aggravated vehicular assault charges.
 {¶ 71} We find nothing in the record of appellant's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.
 {¶ 72} It appears to this Court that the trial court's statements at the sentencing hearing were guided by the overriding purposes of felony sentencing to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11. Based on the transcript of the sentencing hearing and the subsequent judgment entry, this Court cannot find that the trial court's sentence was clearly untenable, legally incorrect, amounted to a denial of justice or that the trial court violated appellant's rights to due process under the Ohio and United States Constitutions in its sentencing appellant to consecutive sentences of incarceration.
 {¶ 73} Appellant's third assignment of error is overruled.
 {¶ 74} For the foregoing reasons, the judgment of the Court of Common Pleas for Stark County, Ohio is affirmed in part and vacated in part. On the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, appellant's conviction and sentence for Count Three, obstructing justice are vacated. Appellant's convictions and sentences for two counts of aggravated vehicular assault, including the trial court's determination that the sentences are to run consecutive to each other and consecutive to Stark County Court of Common Pleas Case No. 2004CR2030 are affirmed.
By: Gwin, J., Wise, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas for Stark County, Ohio is affirmed in part and vacated in part. On the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, appellant's conviction and sentence for Count Three, obstructing justice are vacated. Appellant's convictions and sentences for two counts of aggravated vehicular assault, including the trial court's determination that the sentences are to run consecutive to each other and consecutive to Stark County Court of Common Pleas Case No. 2004CR2030 are affirmed. Costs to appellee.